THE STATE, EX REL. ATTORNEY GENERAL, V. NORTH-WESTERN MUTUAL LIVE STOCK ASSOCIATION.

**Insurance:** REQUISITES FOR TRANSACTION OF BUSINESS. Upon the facts appearing in the record, *Held*, That the defendant was a foreign mutual insurance company, and as such must possess the capital, and make the report to the state auditor required by the statute, and receive his certificate of authority before transacting business in the state.

ORIGINAL action in quo warranto.

*Isaac Powers, Jr., Attorney General, Charles Ogden* and *J. B. Barnes,* for relator.

*J. W. Jamison,* for respondent.

MAXWELL, J.

This is a proceeding to oust the defendant from the privilege of transacting business in this state. It is alleged in the information in substance that the defendant is a cor-. poration organized under the laws of the state of Iowa and territory of Dakota. That for the past six months and up to the present time, it has been and now is, through its agents, servants, and employes, without warrant or authority, doing an insurance business in this state. That said defendant has never filed with the auditor of this state any statement whatever of its condition, capital, nor any sworn copy of its articles of incorporation, nor any certificate showing the amount of capital possessed by said corporation, and has no certificate from said auditor authorizing it to transact business in this state. That said corporation has no capital either subscribed or paid up, yet by its agents it has been and now is soliciting risks and effecting contracts of insurance in this state, etc.

The defendant in its answer admits that it is a corpora-

tion organized under the statutes of Iowa and Dakota, but denies that it is an insurance company, foreign or domestic; denies that it is now or ever has been engaged in the business of insurance in either Iowa, Dakota, or Nebraska; denies that it has employed agents to solicit insurance in this state or that it is violating any law of this state. That the sole purpose of said corporation is the mutual protection of its members and not their pecuniary profit; that it collects no premiums, takes no notes or other obligations, declares no dividends, pays no salaries to its officers or agents, and has no capital stock; that its business is managed by a board of directors selected by and from the members, and from said board of directors a president, secretary, and treasurer are elected, and each and all of said officers are governed by the by-laws of the association and the provisions of its charter; that its membership is purely and wholly voluntary and are bound by no obligation except the by-laws of the association, and the only penalty for failing to comply with said by-laws is expulsion from the association; that the object of the association is to help bear each other's losses on live stock in the manner following, etc. Then follows a statement in detail of the mode of becoming a member of the association, adjustment and payment of losses, etc., to which it is unnecessary to refer.

A copy of a certificate of membership was introduced in evidence and is as follows:

" Certificate of membership in the Northwestern Mutual Live Stock Association of Anamosa, Jones county, Iowa.

"This certificate of membership witnesseth, that L. A. Hart, of Dakota City, Neb., has paid the amount required on application, and has this day become a member of the Northwestern Mutual Live Stock Association of Anamosa, Iowa, subject to the by-laws, rules, and regulations of the association and application for membership, which are hereby made a part of this contract for indemnity, upon

the following described live stock of said member: One black horse named Coaley, value $160, insured $120; one sorrel horse named Frank, value $90, insured $65; one red cow valued at $40, also four P. China hogs, three sows, and one boar in good condition, valued $40. The membership entitles said member in event of the death from accident or disease or injury depreciating the value from the same causes, to indemnity upon any of the above described animals for not more than the indemnity value thereof, upon conditions contained in the by-laws of said association. This certificate may be assigned or transferred by complying with the association's rules. Given under the seal of said association, this 4th day of December, 1883."

This certificate was duly signed by the president and secretary of the association. Attached to the certificate is the following receipt:

"Received of L. A. Hart $4.80 for the purpose of procuring membership in the Northwestern Live Stock Association of Iowa, on the stock of the above named party according to the terms of an application made by said party at the date of this receipt. The condition of this receipt being that, should the said application be accepted by said association and a certificate issued by them on the same it shall be binding; but should the said application not be accepted by the association, the amount paid thereon shall be returned by me to said party on presentation and surrender of this receipt to me." Which is duly signed by the agent effecting the insurance.

There is also testimony tending to show loss, proof of loss, adjustment and a tender of 16 per cent on the amount of the loss.

Our statute (Laws of 1883, 236–7) authorizes any number of persons not exceeding two hundred to make mutual pledges, and give valid obligations to each other for their own insurance from loss by fire, hail, or death; but such association shall in no case insure any property not owned

and occupied by one of their number, and no life except that of a member; nor shall such association pay any salary or compensation to officers, agents, or other employes, and shall receive no premiums and declare no dividends, etc. The defendant seems to claim under this statute, but it is not applicable. The statute evidently was intended for neighborhoods, benevolent societies, etc., where the entire business is to be transacted with the principal officers of the association. Hence the limitation of its membership to two hundred. It was never intended to authorize such an association to do a general insurance business.

The fact that the policy of insurance is in this case in the form of a certificate of membership and that the premium is paid as an admission fee, and by assessments, does not change its character; it is to all intents and purposes a mutual insurance company. As a condition precedent to the right to do business in this state a foreign mutual insurance company must possess a capital of at least $100,-000; must file with the state auditor the statement required by the statute, and must receive his certificate authorizing such company to transact business within the state. None of these things have been done by the defendant. The object of the law was to prevent worthless and irresponsible insurance companies, whether mutual or corporate, from doing business within the state. In either case the certificate of the auditor is necessary. As the defendant is a mutual company and has received no authority from the auditor to transact business here, it is hereby excluded from all rights, privileges, and franchises within the state.

JUDGMENT ACCORDINGLY.

THE other judges concur.