ROYAL HIGHLANDERS, APPELLANT, V. STATE OF NEBRASKA ET AL., APPELLEES.

FILED JUNE 20, 1906. No. 14,642.

1. **Taxation: EXEMPTIONS: BENEFICIAL ASSOCIATIONS.** A fraternal beneficiary association, conducted for the mutual benefit of its members and for the purpose of providing a fund by the payment of stated dues and fees from such members for the payment of a special amount upon the death of each member to a beneficiary named by him, is not a charitable association, and its property and funds are not used exclusively for charitable

purposes so as to be exempt from taxation by the laws of this
state.

2. **Statutes:** CONSTRUCTION. Where the legislature has passed an act
providing for a new system of raising revenue, and has thereby
changed the former methods of procedure relating to matters
of taxation, the courts in construing its provisions are not bound
by any administrative construction of the former revenue law.

3. **Taxation:** CREDITS. Under the rule established by the decisions of
this court for the taxation of credits, a fraternal beneficiary as-
sociation is entitled to set off the amount of its outstanding
beneficiary certificates, matured and unmatured, against secur-
ities in its fidelity or mortuary fund, set apart and devoted
exclusively to the payment of such certificates.

APPEAL from the district court for Hamilton county:
ARTHUR J. EVANS, JUDGE. *Reversed.*

*Hainer & Smith,* for appellant.

*Norris Brown, Attorney General, William T. Thompson*
and *M. F. Stanley, contra.*

*Brome & Burnett, amici curiæ.*

BARNES, J.

This case is before us on appeal from a judgment of
the district court for Hamilton county affirming the order
of the board of equalization of that county in the matter
of the assessment of the property of appellant (Royal
Highlanders, a domestic fraternal beneficiary association)
for taxation for the year 1905. It appears that the asso-
ciation is duly organized under the laws of this state, and
has its home office and principal place of business at
Aurora, in Hamilton county; that in May, 1905, in
response to the demand of the county assessor of said
county, the association delivered to him a schedule of its
property, from which it appears that it was the owner of
certain lots in the city of Aurora, Hamilton county,
Nebraska, and the building situated thereon, of the cost
and value of $21,238.56; that it had on hand furniture,

fixtures and office supplies of the value of $1,200; that it had money in the banks of Aurora amounting to $13,-666.31; that it owned securities deposited as a credit with the auditor of public accounts of the state of Nebraska, amounting to $455,900, which credit was its mortuary fund, deposited under the provisions of the statutes governing the affairs of such associations, the same having been collected and set apart for the payment of its debt due and to become due on the beneficiary certificates issued to and held by its members. All of said property was claimed by the association to be exempt from taxation, for the reason that it was used exclusively for charitable purposes. It was further claimed that the mortuary fund so deposited with the auditor of public accounts was not subject to taxation, because the association had the right to set off the amount of its obligations or debts due and to become due on said beneficiary certificates against said credit, which would leave it no net credit for taxation. Thereupon the assessor duly entered all of said property on the tax lists of said county for assessment. Thereafter the association appeared before the county board of equalization and filed its petition and protest, claiming said property, and all thereof, as exempt, for the reasons stated in its schedule. The board made an order sustaining the assessment as made by the assessor, and the association appealed to the district court for Hamilton county. To maintain its position in that court, the association filed its petition, setting forth more particularly and at large the matters contained in its protest, and prayed for a judgment declaring its property wholly exempt from taxation, and reversing the order of the county board. To this petition the attorney general and the county attorney of Hamilton county filed a general demurrer, which was sustained. The association excepted, elected to stand upon its said petition, offered evidence in support of all of the allegations thereof, which evidence was excluded, and thereupon the court rendered judgment against the association, affirming the order of the board of

equalization, and dismissing the appeal of the association at its costs.

It may be stated, in passing, that it clearly appears from the petition that the appellant is a fraternal beneficiary association, organized under the provisions of chapter 43 of the Compiled Statutes of this state, having a lodge system with ritualistic form of work, and a representative form of government; that it is formed, organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit; that, for and in consideration of certain stipulated payments in the form of fees and dues, it issues beneficiary certificates on the lives of its members, payable after their death to beneficiaries named therein, in mannner and form as provided by its by-laws and the statutes of this state governing such associations; that it has its fidelity or mortuary fund, amounting to $455,900, deposited with the auditor of public accounts, which fund is set apart and pledged by said association and by-laws for the payment of its beneficiary certificates due and to become due, and constitutes a trust fund for that purpose, and for no other; that of its credit balance at the banks, $12,174.98 belongs to said fund, and the remainder thereof, amounting to $491.34, represents a fund used for the purpose of paying the running expenses of the association. The foregoing is an abridged statement of the facts shown by the record, but is quite sufficient as a basis for this opinion.

1. Appellant's first contention is that its entire property is exempt from taxation because it is used exclusively for charitable purposes. This question must be determined, not by what the association professes to be, but by what it really is, and the nature of the business it conducts. The general trend of judicial opinion in this country is that organizations like the appellant are, in effect, mutual insurance companies. In *State v. Live Stock Ass'n*, 16 Neb. 549, it was held that an association which insured only the property of its members by a policy in the form of a certificate of membership, for a premium paid simply

as an admission fee, and by assessing its members to pay for the losses sustained by such certificate-holders, was to all intents and purposes a mutual insurance company. Again, in *State v. Farmers Benevolent Ass'n*, 18 Neb. 276, the court, speaking of associations like the appellant, said:

· "The courts have with a great degree of unanimity treated all such organizations as substantially life insurance companies, applying to them and to the mutual relations of the members the rules and principles applicable to the contract of life insurance."

The appellant classes itself as exclusively a charitable organization, but from an examination of its by-laws, called "Original Edicts," it appears that it is conducted for the sole benefit of its members and their beneficiaries. Its declared purposes are: "First. To unite for mutual benefit and fraternal protection all white persons of sound physical health and exemplary character between the ages of 18 and 65, and to bestow substantial benefits upon the beneficiaries of its membership admitted between the ages of 18 and 48 years who are entitled thereto. Second. To cheer and aid the unfortunate, to comfort and provide for the sick and aged, and to bury with becoming honor the dead of our membership. Third. To educate its members socially, morally, and intellectually, promulgating by ritualistic degrees the principles of prudence, fidelity and valor. Fourth. To establish and maintain funds for the purpose of paying all benefits provided for the members and their beneficiaries, and to defray the expense of management and promotion." All of these purposes are confined to its members, and are dependent upon the payment by them of the assessments required by the by-laws. Beneficiary members get what is paid for, and nothing more. If they cease to pay, they cease to receive. Members continue to pay for the benefit of another, not because of any charitable or benevolent impulse, but because they expect, upon their death, that those whom they are interested in, or bound by law or ties of affection to provide for,

will receive the amount which it is agreed in the beneficiary certificate will be paid by the association to such beneficiary. This is neither charity nor benevolence. Payment to the beneficiary does not depend upon his or her financial condition. A wealthy child or widow of the assured member would be entitled to claim the amount named in his certificate equally with one poor or needy. This benefit is paid because of so much money and so many assessments paid by the assured member. This benevolence or charity is purely of a commercial character; it does not seek out the needy, but invites only the able-bodied and healthy. It is a business arrangement; the beneficiary receives payment because of a contract obligation on the part of the association to make such payment. In *State v. Miller*, 66 Ia. 26, the court held that the Ancient Order of United Workmen, an association of practically the same character as the appellant, is a life insurance company, and that its fraternal character was simply an incident to its many purposes. In *Robinson v. Templar Lodge*, 117 Cal. 370, 59 Am. St. Rep. 193, the court said of an association similar in character and regulations to the appellant, concerning payments to be made to it:

"These benefits are not charities in the strict sense. They are dues, which the society becomes obliged to pay in certain events. It is a matter of right, and not of grace. A consideration is paid, and the lodge reserves no right to withhold payments when the conditions arise."

It seems clear therefore that the appellant is not what may be termed purely or exclusively a charitable organization. It further appears from an examination of its by-laws that its funds are divided into two classes, as follows: "The finance of the fraternity shall be divided into two funds: The fidelity fund and the general fund." The fidelity fund of the association is its mortuary fund, and is set apart for the payment of its beneficiary certificates due and to become due, while the general fund is used for organizing, maintaining and promoting the best interest,

growth and welfare of the fraternity, in other words, for the payment of the expenses of carrying on its business. So we are of opinion that the property of the appellant is not exempt from taxation by reason of its being used exclusively for charitable purposes.

2. It is further contended that we are bound by the administrative construction of our former revenue law. It is said, in substance, that our constitution was adopted in 1875; that the legislature of 1879, acting under the provisions of said instrument relating to taxation, framed a general revenue law, and exempted from taxation all property used exclusively for charitable purposes; that said revenue law has been so construed that no one has ever thought of taxing the funds of a fraternal beneficiary society until the year 1904; that the present revenue act is, in substance, the same as the former one; that the courts are bound by such administrative construction, and should not now hold the property of such associations subject to taxation. The doctrine of estoppel by construction is well established, and the argument of counsel based thereon comes with much force. Indeed, it might be held conclusive, were it not for the fact that in the year 1903 the legislature, by the adoption of the new revenue law, established more effectual methods than those which theretofore obtained in regard to matters of taxation. It is a fact, within the common knowledge of all, and one of which we may take judicial notice, that formerly so much property escaped taxation as to render the revenue of the state insufficient to pay the expenses incurred in conducting its ordinary business affairs, and we were confronted with a continually increasing state debt. This created a universal demand throughout the state for a new revenue law. In answer to this demand the legislature at its session of 1903 adopted our present system. While so much of the present act as designates what property shall be taxed, and what shall be exempt from taxation, is practically the same as those provisions contained in the former revenue law, yet the new act

contains such minute directions for listing, valuing and assessing property for taxation as to render it extremely difficult for any person or corporation to avoid the payment of taxes upon all of his or its property, and the adoption of the new law has resulted in the taxation of the property of appellant and other like associations. The power of the state to make such changes from time to time in its revenue laws, and adopt such new methods in regard to matters of taxation as may be found necessary to raise an amount of revenue sufficient for its needs, cannot be questioned. The legislature having exercised such power, neither taxing officers of the state nor the courts are bound by construction of the former law.

It is further urged that it was the intention of the legislature in passing the present law to completely exempt fraternal beneficiary associations from taxation, and our attention is called to the provisions of the act relating to the taxation of what are called old line insurance companies. It is insisted that, when the legislature provided for taxing such old line insurance companies upon their gross premiums for the preceding year, and exempted fraternal beneficiary associations and other like societies from that provision, the intention was not to tax such associations at all. It seems to us, however, that excepting such associations from those special provisions constitutes no evidence of an intention not to tax them, but, on the other hand, it shows an intention to tax them the same as all persons, corporations and other domestic associations are taxed. If the legislature had intended to exempt them from taxation, it certainly would have expressed such intention and thus put the question beyond all doubt. So we are of the opinion that the property of mutual benefit associations organized under the laws of this state is taxable the same as the property of individuals, corporations and other domestic associations.

3. Finally it is contended by the appellant that it is entitled to set off the amount of its outstanding beneficiary certificates, matured and unmatured, against its fidelity

or mortuary fund. This is the only remaining question for our determination.. It is the settled law of this state that the word "credits," as used in our present revenue law, means "net credits"; that "the taxpayer may deduct from his gross credits the amount of his *bona fide* debts in order to determine the true value of his credits for assessment." *State v. Fleming,* 70 Neb. 523; *Lancaster County v. McDonald,* 73 Neb. 453. The state insists that this fund is money loaned and invested, and therefore must be taxed. Money loaned or invested within the ordinary meaning of the term is money or capital laid out with a view of obtaining a profit or income therefrom. The fact that the fund in question has assumed the form of bonds, mortgages and other securities does not of itself fix its nature or determine its use. It is the use to which it is put that determines its character. That this fund is not loaned or invested for profit, within the ordinary meaning of the term, seems clear. As above stated, the fidelity or mortuary fund of the association is set apart by its by-laws and the laws of this state as a trust fund for the payment of its beneficiary certificates. This fund must be kept and conserved for that particular purpose. The statute provides how it shall be invested for its preservation, and the manner in which it may be withdrawn from time to time for the purpose of paying the beneficiary certificates of the association as they become due. It is a credit which was created for that particular purpose, and no other. A like question was before the supreme court of Alabama in *Alabama Gold Life Ins. Co. v. Lott,* 54 Ala. 499, where it was held that a life insurance company, when its solvent credits are assessed for taxation, is entitled to have deducted therefrom its premium reserve. The same question was before the supreme court of Iowa in *Equitable Life Ins. Co. v. Board of Equalization of City of Des Moines,* 74 Ia. 178. The court said:

"It is plain that the legislature enacted this statute to secure to the policy-holders the performance of the obligation to pay the amount secured by the policy. This

statute, therefore, recognizes the existence of a debt from the company to the policy-holders, and provides for securing its payment through this reserved fund. To us it seems plain that the plaintiff is indebted to each of its policy-holders, and the aggregate amount of such indebtedness equals this reserved fund, which should be deducted from plaintiff's money and credits in listing the same for taxation."

In *Michigan Mutual Life Ins. Co. v. Common Council of Detroit,* 133 Mich. 408, the question of the right of a mutual life insurance company (organized for profit), under a statute practically like our own, to set off its reserve fund credits against its mortuary debts for the purpose of taxation was before the court, and it was held that it had the right to deduct the amount of its policies from its premium reserve; that the reserve fund of the company represents its indebtedness to its policy-holders, and should be exempt from taxation.

It is contended by the state, however, that the foregoing decisions furnish no authority for the determination of the question involved in the instant case; that they apply only to old line life insurance companies, and the reason given for such contention is that the policies of old line companies have a present surrender value, while the beneficiary certificates of fraternal associations have no such value. It seems to us that this is a distinction without a difference. It is difficult to understand why old line insurance companies, which are organized for the purpose of gain and profit, should be accorded the privilege of the set-off, and that right denied to beneficiary associations, which are organized solely for the purpose of conserving the interests of their members and are prohibited by law from being conducted for the purpose of gain. It seems clear to us therefore that the beneficiary certificates issued to the members of the appellant association create a debt against it, for the payment of which the fund or, in other words, the credit in question is specifically pledged. So we are of opinion that the certificates create a *bona fide*

debt, payable out of the particular credit or fund known as the fidelity or mortuary fund of the association, and may, for the purpose of taxation, be set off against credits or securities in such fund. We are also of opinion that all of the property' of the association which has not been segregated, set aside, transferred to, and become a part of the securities in its mortuary fund is taxable under the provisions of our present revenue law. It follows that the trial court erred in sustaining the demurrer to the appellant's petition, and in rendering judgment affirming the order of the board of equalization.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings according to law.

REVERSED.

SEDGWICK, C. J., dissents.

LETTON, J., concurring specially.

I concur in the view expressed in the opinion of Mr. Justice BARNES as to fraternal beneficiary associations, such as the Royal Highlanders, not being charitable associations and entitled to exemption from taxation for that reason. I also agree that this court is not bound by any administrative construction of the former revenue law for the reasons set forth in his opinion. With the conclusion reached I also concur, but, since I do so mainly upon grounds not mentioned in his opinion, I deem it proper to briefly state my views.

The question whether or not the securities held in pledge by the Royal Highlanders, or other domestic fraternal beneficiary associations, or whether the reserve held by domestic old line life insurance companies, are taxable as the property of the respective associations or corporations, is purely one of statutory construction. The controlling question for the court to determine is, what was the intention of the legislature with respect to the subject matter? To ascertain this intention is the sole duty of the court in

the premises, and, when this is determined, the construction must stand until such time as the legislature may determine that the court has incorrectly interpreted the meaning of its language, and enacts a new provision so clear and specific that all may understand. To ascertain the intention of the lawmaker, we must consider the whole statute, its purpose and object, and the means provided in the act for attaining the desired end. Uniformity in taxation is essential under our constitution, and it must be presumed that the legislature intended, as nearly as possible, taking into consideration the innumerable phases, conditions, and forms in which property appears, to secure uniformity. In accomplishing this result, it is proper to classify property, individuals or corporations, and by sections 58, 59, 60 and 61 of the law under consideration this classification has been made so far as concerns insurance companies. These sections have been the subject of consideration in *State v. Fleming,* 70 Neb. 523, and in *Aachen & Munich Fire Ins. Co. v. City of Omaha,* 72 Neb. 518, and they were upheld as a proper exercise of the taxing power in that behalf. By section 59 all *foreign* life and accident insurance companies, except fraternal beneficiary associations and mutual assessment companies, were placed in one class, and by section 61 all *domestic* life, fire, accident, or surety companies, except fraternal beneficiary associations and mutual assessment companies, were placed in another class. By the provisions of section 59 each foreign company is required to pay into the state treasury 2 per cent. of the gross amount of premiums received by it during the preceding calendar year for business done in this state. This is a business tax imposed under the second clause of section 1, art. IX of the constitution, and such companies are also liable for taxation upon all their property within the state the same as other corporations or individuals, *State v. Fleming, supra,* and *Aachen & Munich Fire Ins. Co. v. City of Omaha, supra.* Section 61 provides that all domestic companies shall be taxed in each local political subdivision where the agent conducts the busi-

ness, upon thei.· gross premium receipts for the preceding year, less premiums on canceled policies and reinsuran·· ?, such gross receipts less reinsurance and cancelation to be taken as an item of property of that value, and be assessed and ta: .ed on the same percentage of such value as other property. This tax also is a business tax, and each of such domestic companies is liable also to be taxed upon its tangible property the same as any other individual or corporation within the state.

No specific provisions are made for taxation of fraternal beneficiary associations, or mutual assessment companies, having no capital stock, making no dividends, and whose scheme of insurance does not contemplate the return of any profits to policy-holders. The tangible property of such associations and mutual companies, whether domestic or foreign, is to be taxed, therefore, the same as the property of other persons and corporations. It is made compulsory upon domestic corporations carrying on the business of life insurance under the old line plan to accumulate and keep on hand a fund for the purpose of meeting their outstanding obligations to policy-holders, and, although not compulsory in the case of domestic fraternal beneficiary associations or mutual assessment companies, it is a matter of common knowledge that a number of such associations or companies, including the Royal Highlanders, voluntarily have accumulated a fund, variously designated as a mortuary, reserve, or emergency fund, for the purpose of meeting liabilities to their certificate-holders as they mature, in order to prevent such frequent assessments as experience has shown may be caused by epidemics of disease or widespread calamities. Whether held by old line companies or associations formed upon the assessment plan, these funds are set apart to meet obligations of a certain nature. They are not the property of the company or association for general purposes, but are devoted to a specific end. In the case of foreign life insurance companies, these accumulations are held. in other states or countries and are not within the reach of the taxing officers of this state. In this

state such companies, therefore, merely pay 2 per cent. upon the gross amount of premiums received during the preceding year, into the state treasury as a business tax, and are otherwise assessed only upon their tangible property within this state, which may or may not exist, since its existence is not essential to carrying on business. They are relieved from all local taxation, except upon tangible property, unless taxed by local ordinances upon their business. Domestic companies, however, are taxable in each county, town, city, village, and school district, where an agent conducts their business, upon their gross receipts, less reinsurance and return premiums, on the same percentage of value as other property, and in addition thereto are taxed upon their tangible property.

It will be seen, from a comparison of these provisions with reference to the taxation of foreign and domestic life insurance companies, that if the law is construed so that the special reserve or mortuary funds of domestic companies and of domestic fraternal beneficiary associations, accumulated, reserved, and set apart to meet their liability to their policy and certificate-holders, are to be taxed as the property of such companies and associations, a heavy burden is placed upon domestic organizations from which foreign are exempt. The business tax which domestic companies are required to pay may be as great as, or greater than, that exacted from foreign companies, depending upon local conditions. It is not to be presumed that the legislature intended to impose a heavy burden upon domestic enterprises of this character from which those organized in other states are free. It would be doing violence to common sense to believe that its intention was to make a hostile discrimination against citizens of this state in favor of citizens of other states. It may be said that foreign companies are taxed in the states or countries of their domicile upon such funds, but, as is pointed out in the opinion of my brother BARNES, in several states where net credits are the subject of taxation the amount of liabilities to policy-holders has been held entitled to be properly

offset against gross credits in the form of such securities. It may further be said that the methods of taxation of insurance corporations in other states are so various and diverse that it is almost impossible to say whether or not such accumulations are subject to any portion of the taxes paid by such companies. Many of the states provide for the taxing of insurance corporations, not by the value of their tangible property, but by franchise, business, or license taxes alone, and so far as I can determine from an examination of the statutes, in the main such funds, if taxed at all, are not taxed directly, as is sought to be done in this case. While, in the case of ordinary business, and if considered without relation to the sections of the revenue law relating to the subject of insurance taxation, it may be questioned whether contingent liabilities are such debts as would be entitled to be offset against credits, yet, considering the subject of insurance taxation as a whole, the conclusion reached by my brother BARNES seems to me to express the legislative intent.

With respect to the taxation of insurance companies and fraternal beneficiary associations, as well as in many other respects, the provisions of the revenue law of 1903 are far from clear and definite, and may be expected to give rise to many controversies. If the construction now placed upon the law fails to evidence the purpose of the lawmakers, the remedy lies with the legislature. The resources of the English language are vast and rich and flexible enough so that it may express its intention in phrase so clear and plain that an ordinary man may understand, and thus relieve the court from liability to a misconstruction of its meaning, and the taxpayers of the state from unnecessary litigation.