SCANDINAVIAN MUTUAL AID ASSOCIATION, APPELLEE, v. KEARNEY COUNTY, APPELLANT.*

FILED APRIL 23, 1908. No. 15,141.

1. **Taxation:** ASSESSMENT: MUTUAL INSURANCE COMPANIES: RESERVE FUND. A mutual insurance company, organized under the laws of this state for the mutual benefit of its members, and not for profit, is entitled to set off the amount of its outstanding benefit certificates against securities in its reserve fund set apart and devoted exclusively to the payment of such certificates.

2. **Case Followed.** *Royal Highlanders v. State*, 77 Neb. 18, adhered to.

APPEAL from the district court for Kearney county: ED L. ADAMS, JUDGE. *Affirmed.*

*C. P. Anderbery*, for appellant.

*J. L. McPheely*, contra.

EPPERSON, C.

The appellee is a mutual life insurance company, of this state, with its principal place of business at Minden, in Kearney county. It is conducted solely for the benefit of its members and their beneficiaries, and not for profit. For the purpose of protecting its members against an increased death rate, it established a reserve fund which was created by the contributions of its members. Under its by-laws the reserve fund was invested in securities, and is to be drawn upon only in the event that the death losses exceed the natural or expected rate. In 1906 the assessor required appellee to list said reserve fund for

_____

* Rehearing denied. See opinion, p. 473, *post.*

taxation, which was done, and taxes were levied against it. Appellee paid the taxes under protest, and later filed its claim for the amount thereof with the county board. The county board rejected the claim, and an appeal was taken to the district court, where appellee filed its petition, alleging the facts. A general demurrer filed by the county was overruled, and upon the county's refusal to plead further a judgment was rendered in favor of the claimant. The county appeals.

The case involves the liability to taxation of the reserve fund of mutual insurance companies. It is conceded that this question was determined by this court adversely to the contention of the appellant in *Royal Highlanders v. State,* 77 Neb. 18. But it is argued that that case is wrong and should be overruled. Counsel for appellant, in his very able argument and brief, severely criticises the rule permitting taxpayers to deduct the amount of personal liabilities from their credits in determining the amount of taxable credits. In *State v. Fleming,* 70 Neb. 529, it was held: "In making a return of his taxable property under the provisions of chapter 73 of the laws of 1903 the taxpayer may deduct from the credits due him all just debts by him owing at the time of such return." This rule was adhered to in *Lancaster County v. McDonald,* 73 Neb. 453; *Oleson v. Cuming County, ante,* p. 209, and *Royal Highlanders v. State, supra.* Counsel suggests as a reason for the overruling of the *Royal Highlanders* case that the court did not take into consideration the provisions of section 27 of the revenue law (Comp. St. 1901, ch. 77, art. I), which was repealed by the act of 1903 (laws 1903, ch. 73), in determining what was in fact the intention of the legislature with reference to the assessment of credits. Section 27 of the old act provided: "In making up the amount of credits which any person is required to list, * * * he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing by such person." The new act nowhere expressly provides that net credits alone were

to be assessed, but provides for the assessment of credits, which the appellant contends means gross credits. It is true that this feature of the law was not reviewed in the *Royal Highlanders* case, but we find that it was considered at some length in *State v. Fleming, supra,* wherein Mr. Commissioner DUFFIE examined the identical question here presented, and that too with reference to the language of both the repealed section and its substitute in the new act. It is unnecessary to repeat the reasoning of that case. It is a sufficient answer to the present contention of the appellant. The discussion by Mr. Commissioner DUFFIE of this question was referred to in the dissenting opinion in *Lancaster County v. McDonald, supra,* as *obiter dictum;* but it was adopted by the majority opinion in that case, and also in the *Royal Highlanders* case. The question has been very much considered by this court, and the rule quoted from *State v. Fleming, supra,* may now be said to be fairly well established. Therefore the statute must be read as though it expressly provides that the net credits only of the taxpayer were to be assessed.

In support of the conclusions reached in the *Royal Highlanders* case, as announced in the opinion of BARNES, J., the court cited *Alabama Gold Life Ins. Co. v. Lott,* 54 Ala. 499; *Equitable Life Ins. Co. v. Board of Equalization,* 74 Ia. 178, and *Michigan Mutual Life Ins. Co. v. Common Council of Detroit,* 133 Mich. 408. It is now urged as a reason for the overruling of our former decision that these cases are not in point, in that they reccognize the principle that present reserve values of outstanding policies only may be offset against the reserved fund, and not the contingent part of such outstanding policies. The plaintiff in the case of *Alabama Gold Life Ins. Co. v. Lott, supra,* was an old-line life insurance company. It was organized not only for the insurance of the life of its members, but also for profit to its stockholders. Whether or not the value of its reserve fund should be taxed to the extent of its excess over and above

the present value of the interest held therein by its assured is a question in which we are not concerned. It was there said: "A life insurance company, therefore, when its solvent credits are assessed for taxation under a statute, which declares that from them 'the indebtedness of the taxpayer shall be deducted, and that the excess only shall be taxed,' ought to be allowed to have deducted therefrom its 'premium reserve.'" It is apparent that a successful old-line insurance company will have continuously on hand assets in excess of their liabilities. As we understand *Alabama Gold Life Ins. Co. v. Lott,* it was determined that the company was not entitled to set off against its reserve fund the face value of its outstanding insurance, but that it was entitled to deduct its premium reserve, which constituted only a part of the fund subject to be taxed, and which represented the value of the particular amount which was set aside to meet losses occasioned by an increased death rate. The entire reserve fund created and held by mutual insurance companies, such as the appellee herein, and not organized for profit, corresponds to the premium reserve of the Alabama Gold Life Insurance Company, and presumably of other old-line companies. Under the law of this state mutual insurance companies, such as the appellee herein, are not permitted to create a reserve fund for any other purpose, and we cannot presume that such company has violated the law, nor that they have in fact created a fund or have become the owner of a credit which is not subject to the claims of its members.

It is true, as stated by appellant, that the policies held by the members of the appellee company have no present surrender value, but it does not necessarily follow that the interest which the members have in the reserve fund is a contingent demand to the extent that the fund may never be expended for the purposes for which it exists. It is a fund which belongs to the members of the society. It was created, as shown by the petition demurred to, for the purpose of paying death losses whenever the death

rate should become extraordinary or unusual, or whenever the usual and ordinary current assessments made upon the members would be insufficient to pay the liabilities of the company. This fund could be used for no other purpose. It was held by the society for the benefit of its members. As said in the opinion of LETTON, J., in *Royal Highlanders v. State*, 77 Neb. 18, 28: "while, in the case of ordinary business, and if considered without relation to the sections of the revenue law relating to the subject of insurance taxation, it may be questioned whether contingent liabilities are such debts as would be entitled to be offset against credits." But, considering the question of contingent liabilities with reference to the case before us, it is apparent that the liability of the appellee to eventually pay the fund in controversy to its members is not contingent. It is an event which is sure to occur. The only contingencies there are with reference thereto is the uncertainty with reference to the time when it will need to be expended, and the particular members whose beneficiaries will be paid from this fund, instead of from the fund collected by the usual and ordinary assessments levied upon the membership. But that this fund will be paid for the purposes for which it is created is an absolute certainty. It stands appropriated for that purpose. In *Alabama Gold Life Ins. Co. v. Lott, supra,* it was held substantially that the value of the interests in the reserve fund owned by the assured could be deducted from the credits. The interest thus deducted was considered and adjudged to be the amount of its "premium reserve." The principle announced in this case and the others above cited were in point, and a further consideration thereof has strengthened our conviction that *Royal Highlanders v. State* should be adhered to.

We recommend that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed November 6, 1908. *Rehearing denied:*

Taxation: ASSESSMENT: CONSTITUTIONAL LAW. The revenue law of this state, which permits, under the interpretation of this court, a taxpayer to deduct his *bona fide* debts from his gross credits, is not in conflict with section 1, art. IX of the constitution.

GOOD, C.

The opinion in this case, by Commissioner EPPERSON, is reported, *ante,* p. 468. Defendant has asked for a rehearing upon a question which was raised and argued, but which is not decided nor discussed in the opinion. Defendant's contention which was not decided in the opinion is that our present revenue law, which provides for the assessment of net credits rather than gross credits, is unconstitutional. Section 10911, Ann. St. 1907, required that all property in this state not expressly exempt therefrom shall be subject to taxation and shall be valued at its actual value. Section 10904 defines the word "credit." In *State v. Fleming,* 70 Neb. 529, it was held that the term "credit" meant "net credit," and it was there held that from the gross credits the taxpayer was entitled to deduct all his *bona fide* debts, and that he was required to list for taxation only his net credits. Defendant urges that the revenue law as thus interpreted by this court is in conflict with section 1, art. IX of the constitution, which is as follows: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises, the value to be ascertained in such manner as the legislature shall direct, and it shall have power to tax peddlers, auctioneers, brokers, hawkers, commission merchants,

showmen, jugglers, inn-keepers, liquor-dealers, toll bridges, ferries, insurance, telegraph and express interests or business, venders of patents, in such manner as it shall direct by general law, uniform as to the class upon which it operates."

Defendant urges that allowing the debts to be set off or deducted from the gross credits of the taxpayer, in effect, permits such portion of the gross credits of the taxpayer as equals his debts to be released from assessment and taxation, and results in levying taxes unequally upon the taxable property in the state which is not exempt from taxation. In support of its contention we are cited to the case of *Supreme Lodge M. A. F. O. v. Board of Review*, 223 Ill. 54. The supreme court in Illinois in that case held unconstitutional a statute which specifically exempted from taxation all the money collected and on hand within the state of fraternal beneficiary societies, and used exclusively for the purpose of such societies, and not for pecuniary profit. The constitutional provisions of Illinois are identical with the constitutional provisions of this state above quoted. An examination of the case does not, in our opinion, support the contention made by defendant. The Illinois statute which was held unconstitutional exempted all of the money of fraternal beneficiary societies. There was no question there of ascertaining the value of the society's credits or of its property, nor was there any question involved of the taxation of net credits instead of gross credits. If allowing the debts of the taxpayer to be deducted from his credits for the purpose of assessment is unconstitutional, then the section of our former revenue law which provided specifically for the taxation of net credits was unconstitutional. That section was in force for a great many years, and, so far as we are aware, its validity was never questioned upon the grounds now urged by the defendant. The legislative and executive branches of the state government believed that section constitutional, and taxpayers and the profession acquiesced in the validity of that section for

many years.  While this is not conclusive as to its con-
stitutionality, it is at least significant, and has some
weight.  If defendant's position is well grounded, then
choses in action, although credits and property, must be
listed for taxation by the owner thereof, whether a bank
or other corporation, or individual.  Defendant's conten-
tion would require every bank to list for taxation all of
its money and its bills receivable, but such a system has
never been adopted in this state, nor do we think that it
was contemplated by the framers of the constitution that
it should be.  As pointed out in the opinion by Commis-
sioner DUFFIE in *State v. Fleming, supra,* if the taxpayer
were required to list his gross credits, and were not al-
lowed to offset therefrom his *bona fide* debts, it would
result in compelling him to pay taxes in some instances
of many times the value of the net worth of the taxpayer.
It would result in requiring every bank to pay taxes upon
several times the value of its capital stock, and would
practically result in bankrupting many of the financial
and manufacturing institutions of the state.  Such a con-
struction of the constitution was never contemplated by
its framers.  In *Mortensen v. West Point Mfg. Co.,* 12
Neb. 197, it was held that section 17 of the revenue act
of 1869, providing for the assessment of the stock of
corporations, did not conflict with section 1, art. IX of the
constitution.  If the section regarding the taxation of the
capital stock of corporations, including banks, does not
violate the provisions of section 1, art. IX of the consti-
tution, we do not think it can be said that the provisions
of the present revenue law, which, as interpreted by this
court, require the assessment of net credits, instead of
gross credits, can be held a violation of that section of
the constitution.

It follows that the original opinion filed in this case
should be adhered to, and the motion for rehearing should
be denied.

By the Court: For the reasons given in the foregoing

opinion, the former opinion in this case is adhered to, and the motion for rehearing is

OVERRULED.