STEPHENSON SCHOOL SUPPLY CO., A PARTNERSHIP, APPELLANT, V. THE COUNTY OF LANCASTER ET AL., APPELLEES. UNIVERSITY PUBLISHING COMPANY, A NEBRASKA CORPORATION, APPELLANT, V. THE COUNTY OF LANCASTER ET AL., APPELLEES.
110 N. W. 2d 41
Filed June 30, 1961. Nos. 34968, 34969.

*Cline, Williams, Wright, Johnson, Oldfather & Thompson* and *Charles E. Wright,* for appellants.

*Paul L. Douglas, William D. Blue,* and *Bernard Wishnow,* for appellees.

*Fraser, Wenstrand, Stryker, Marshall & Veach* and *Tracy J. Peycke, amici curiae.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

These two cases were consolidated for trial in the district court by agreement of the parties and, by like stipulation in this court, were briefed and tried together. They involve the same two questions. The first is whether in listing book accounts for taxation under sections 77-701 to 77-732, R. R. S. 1943, a taxpayer may deduct therefrom the amount of its accounts payable, and secondly, whether book accounts owed by the state or its subdivisions and, particularly in these cases, school districts organized and existing under the laws of the State of Nebraska are exempt from taxation.

Both of these cases were tried under stipulations as to the facts and there is no dispute in regard to them.

In the Stephenson Company case the stipulated facts are that on March 1, 1959, the company's book accounts showed accounts receivable of $68,258, which included $62,000 owing to the company from various school districts organized as public corporate bodies under the

laws of the State of Nebraska. On the same date the company's liabilities as reflected by its books showed accounts payable in the sum of $38,563. The company listed its accounts receivable, after deducting $62,000 owed by various school districts so organized, at $6,258 as the actual valuation of its book accounts subject to taxation on its 1959 personal property tax return. The Lancaster County assessor raised the valuation to $68,- 255, by adding back and including in such sum the entire value of the company's accounts receivable from said school districts. Notice was given to plaintiff on May 8, 1959. On May 26, 1959, the company filed written complaint with the Lancaster County board of equalization objecting to the valuation placed on its book accounts, claiming the accounts with school districts exempt and also stating that the company had neglected to deduct its accounts payable in the sum of $38,- 563 from its accounts receivable; that since filing its tax schedule it was informed and believed this should have been done; and that both the accounts receivable owed by the school districts and the accounts payable should have been deducted, leaving the value of its book accounts subject to tax at zero.

The stipulation in the University Company case sets out its book accounts as of March 1, 1959, in the same manner. The book accounts, being in the amount of $103,100 of which sum $98,010 were owed by such public school districts of the State of Nebraska, and its books likewise showed accounts payable in the sum of $25,470. Its original return for the year 1959 listed its book accounts after deducting the school accounts at the sum of $5,093. The assessor likewise increased the value thereof to the sum of $103,100 by adding back the accounts receivable from the school districts. Timely notice was thereupon given to the University Company and the company filed objections which claimed both the school district accounts and the accounts payable should

be deducted, leaving its book accounts subject to taxation also at zero.

After hearing the board of equalization voted that no change be made in the assessment in either case. Each company thereupon perfected an appeal to the district court and upon trial thereof the court found that the assessments of the board in both cases were proper and entered judgment in each case dismissing the appeal. Motions for new trial were overruled and plaintiffs have perfected appeals to this court and, pursuant to stipulation, have consolidated them for briefing and argument.

A brief of counsel for Peter Kiewit Sons', Inc., which has similar pending questions, was filed as amici curiae.

We will first take up the question in regard to whether or not the plaintiff companies may deduct from their book accounts their accounts payable as claimed.

In order to understand the present law it will be necessary for us to review the history of taxation of intangibles and particularly accounts receivable under the designations of "credits," "gross credits," or "book accounts," hereinafter discussed.

The Constitution of 1875 in Article IX, section 1, in regard to taxation, so far as here material, reads as follows: "The Legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises the value to be ascertained in such manner as the legislature shall direct, * * *."

The revenue law of 1879, Laws 1879, pp. 273 to 349, contains the following. Section 4 provides in part as follows: "Personal property shall be valued as follows: * * * Second. Every credit for a certain sum, payable either in money or labor, shall be valued at a fair cash value for the sum so payable; * * *." Section 7, so far as here material, reads as follows: "Personal property shall be listed in the manner following: * * * Second.

He shall also list all moneys and other personal property invested, loaned, or otherwise controlled by him as the agent or attorney, or on account of any other person or persons, company, or corporation whatsoever, and all moneys deposited, subject to his order, check, or draft, and *credits due from or owing by any person or persons, body corporate or politic, whether in or out of the county."* Section 27 provides in part as follows: *"In making up the amount of credits which any person is required to list for himself, or for any other person, company or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all bona fide debts owing by such person, company or corporation, to any other person, company, or corporation, for a consideration received; \* \* \*."* (Emphasis ours.)

It is quite evident from the inspection of section 27 above set out that the credits of the taxpayer should under that act be reduced by the debts of the taxpayer. It was patently so by its express provision. This act remained practically unchanged until the year 1903 when the Legislature passed a new general revenue law which reenacted section 7, Laws of 1879, which in the 1903 act was Laws 1903, c. 73, § 28, p. 394. At the same time, however, section 27 of the revenue act of 1879, being then section 4308, Compiled Statutes for 1901, was repealed. Thereafter there was no statutory provision expressly authorizing the deductions of "debits" from "credits," as they were then termed.

Following the passage of this act came questions concerning what was meant by the word "credits" without any provision giving express permission for deducting debits. This court in a series of cases cited by all parties hereto held that under the 1903 act "credits" meant "net credits" and the taxpayer could still deduct his debts from his gross credits. State ex rel. Breckenridge v. Fleming, 70 Neb. 523, 97 N. W. 1063; Lancaster County v. McDonald, 73 Neb. 453, 103 N. W. 78; Critchfield v. Nance County, 77 Neb. 807, 110 N. W. 538; Oleson v.

Cuming County, 81 Neb. 209, 115 N. W. 783, Scandinavian Mutual Aid Assn. v. Kearney County, 81 Neb. 468, 116 N. W. 155, on rehearing, 81 Neb. 473, 118 N. W. 333; Nye-Schneider-Fowler Co. v. Boone County, 102 Neb. 742, 169 N. W. 436. In all of the foregoing cases, except Critchfield v. Nance County, *supra,* the deduction of debits from credits was allowed. In that case only, however, an owner of a bank deposit was held not entitled to deduct a note of the taxpayer in another bank. This was on the theory that it was not just a "credit" as mentioned in the act, but a "bank deposit," required by the statute to be listed in special terms and as to which no authority to deduct had ever been given.

This continued to be the law until 1921 when a statute making extensive changes in the revenue act was passed, including the following taken from Laws 1921, c. 133, art. VIII, § 1, p. 582. "Moneys, *gross credits*, including corporation shares or stocks, United States legal tender notes, and other notes and securities of the United States payable on demand, notes (other than notes secured by mortgages on real estate situate in this state), accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind (other than notes secured by mortgages on real estate situate in this state), securities, debentures, bonds, (other than those of the United States or of this state or governmental subdivision of this state), annuities, and all other demands for labor or other valuable thing, whether due or to become due, and all other intangible property, except as herein otherwise provided, shall be separately listed and shall be taxed on the basis of twenty-five per cent of the mill rate levied upon tangible property where said intangible property is assessed, the same to be assessed and collected where the owner resides." (Emphasis ours.)

This it is noted was passed shortly after the effective date of the constitutional amendments of 1920 which, among other things, provided for a different method of

taxing intangibles. It is clear from this act what the Legislature meant by the words "gross credits." Particularly is this true when one refers to the cases cited which construed the 1903 act where a great deal of the discussion was whether "credits" in the previous act meant "gross" or "net" credits. We are not cited to any cases thereafter which held that one's debts could be subtracted from one's "credits" for assessment purposes and there appears to be no ruling thereon by this court. We believe the meaning of the legislation was so clear that no litigation followed.

This section seems to have clearly provided for listing and taxation of "gross credits, including * * * demands for labor or other valuable thing, whether due or to become due, and all other intangible property, except as herein otherwise provided, * * *."

Though changed in form it was not changed in substance in any respect affecting credits prior to 1929 when it appeared as section 77-701, Comp. Stat. 1929, as follows: Moneys, *gross credits*, including corporation shares or stocks, United States legal tender notes and other notes and securities of the United States payable on demand, notes (other than notes secured by mortgages on real estate situated in this state), accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind (other than notes secured by mortgages on real estate situated in this state), securities, debentures, bonds (other than those of the United States or of this state or governmental subdivisions of this State), annuities and all other demands for labor or other valuable things, whether due or to become due, and all other intangible property shall be separately classified, listed and taxed as follows: Class A. Class A shall consist of money, United States legal tender notes and other securities of the United States payable on demand, saving accounts, all bank deposits, bills of exchange, checks and drafts. * * * Class B. Class B shall include all other kinds of intang-

ible property named in this section which is not included in Class A. * * *" (Emphasis ours.)

In 1943 there was a general revision of the statutes. The first part of this section was shortened and there it appears as follows: "77-701. Intangible property; separately classified, listed, and taxed; classification. Intangible property, other than notes secured by mortgages on real estate situated in this state and other than bonds of the United States, of this state or governmental subdivisions of this state, shall be separately classified, listed and taxed as follows: * * *." Subdivisions (1) and (2) making the division between the two classes of property were unchanged.

It is apparent from the Revisor's notes in the report of the 1943 Statute Commission, volume 3, parts 8 to 10, section 77-701, that the statute was rewritten and shortened for clarity without intended change in meaning, that intangible property was substituted for the itemization of the various types of property, and that all intangibles were intended to be covered except as specifically excepted.

The Laws of 1943 which approved the commission's report and made it law upon publication, Laws 1943, c. 115, § 9, p. 403, provide that all acts of a general nature shall be construed as a continuation of such laws and not as new enactments.

In Hoctor v. State, 141 Neb. 329, 3 N. W. 2d 558, this court held: " 'A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable. * * * No presumption arises from changes of this character that the revisers or the Legislature in adopting the revision intended to change the existing law; but the presumption is to the contrary, unless an intent to change it clearly appears.' 59 C. J. 894."

In 1953, this statute was changed to its present form which is section 77-701, R. R. S. 1943, from which we quote as follows: "Intangible property, other than notes secured by mortgages on real estate situated in this state and other than bonds of the United States, of this state, or of governmental subdivisions of this state, shall be separately classified, listed, and taxed as follows:

"(1) Class 'A' shall consist of money, United States legal tender notes and other securities of the United States payable on demand, *book accounts*, savings accounts, bank deposits, bills of exchange, checks, and drafts.

"(2) Class 'B' shall include all other kinds of intangible property which is not included in Class 'A'." (Emphasis ours.)

The title to the 1953 act, Laws 1953, c. 266, p. 878, sets out its purpose as an act to amend sections 77-701, 77-703, and 77-704, R. R. S. 1943, relating to revenue and taxation; to reduce the rate of taxation of Class B intangible property; to expressly include book accounts in Class A intangible property; and to repeal the original sections.

The plaintiffs list their "book accounts" as such but claim they should deduct therefrom their accounts payable which the stipulated facts show are available from their books. It is to be noted from this discussion that since the year 1921 the deduction of debts from credits was not permitted because of the statute requiring the listing of "gross credits." The title to the legislative act in 1953 gives no intimation that the Legislature intended any change which would allow a taxpayer to deduct his accounts payable from his book accounts. The plaintiffs state that the plain and ordinary meaning of the term "book accounts" is a record of debits and credits kept in a book. They cite certain dictionaries and legal authorities in support of that contention. They also cite certain cases as follows: Taylor v. Horst,

.52 Minn. 300, 54 N. W. 734; Heringa v. Ortlepp, 167 Ill. App. 586; Purvis v. Kroner, 18 Ore. 414, 23 P. 260; Robin v. Smith, 132 Cal. App. 2d 288, 282 P. 2d 135, which concern and define accounts, book accounts, mutual accounts, and open accounts. These cases all involve suits in the nature of assumpsit based on some memorandum or notation which is alleged either to be or not to be the particular type of account involved. On the question of the meaning of "book accounts" as assets to be listed for taxation they have no application.

The plaintiffs also cite State ex rel. Breckenridge v. Fleming, *supra;* Nye-Schneider-Fowler Co. v. Boone County, *supra;* Lancaster County v. McDonald, *supra,* all of which cases were decided on the statutes prior to the revenue act of 1921, asserting that the rule of deducting debits from credits to make net credits should be applied to the words "book accounts," now in the statute making them in effect "net book accounts." We cannot believe that the Legislature by the act of 1953 intended to revive a construction similar to that of some 30 years ago when the title has no reference to or suggestion of such an intent or object.

This court is familiar with the legislative problems which have for years engaged the Legislature in attempting to have intangible property properly listed for taxation. The old construction might have been useful under the Constitution of 1875 when such intangibles were subject to the same levy as ordinary tangible property, but the Legislature might not think it suitable now.

Plaintiffs assert that courts should give to statutory language its plain and ordinary meaning. We agree in general with this statement and that such meaning is appropriate in statutes requiring the taxpayers generally to list their property. The words "book accounts" in this statute would seem to include, and be understood by the ordinary taxpayers to include, his credit assets or the debts due from others. It is so understood

by an ordinary person who speaks of working on his accounts or book accounts, or of assigning them or collecting them, or reducing or curtailing them. Neither should this term be narrowly restricted to a certain type of an account kept in a book with credits and charges, or any such technical meaning as the plaintiffs seek to give to it. Nor does the term justify the reduction of the taxpayer's book accounts by his debts owed his creditors. Many taxpayers would have no record of their total book accounts receivable or book accounts payable or the net amount after one is set off against the other.

Plaintiffs assert that it is the policy of this state to avoid, so far as possible, double taxation. They cite Peter Kiewit Sons' Co. v. County of Douglas, 161 Neb. 93, 72 N. W. 2d 415; Nye-Schneider-Fowler Co. v. Boone County, *supra;* Peters Trust Co. v. Douglas County, 113 Neb. 596, 203 N. W. 1001. These cases are authority for the general proposition. They, however, likewise state that the Legislature may enact laws that result in double taxation and if it does it is a valid exercise of the taxing power. Plaintiffs contend that if the accounts receivable are not deducted from their book accounts it will result in double taxation. Defendants cite authorities which hold that double taxation in the prohibited sense does not occur because of the taxation of accounts receivable without a deduction for accounts payable. 84 C. J. S., Taxation, § 45, p. 142; Williams v. Brookline, 194 Mass. 44, 79 N. E. 779. To some extent double taxation might occur by the taxation of book accounts whether net or gross as, generally speaking, debts in either case are owed by debtors who have property which is taxed. The Legislature could levy the tax either way and the extent of double taxation by either method is not controlling as indicating its intention.

The present statute, section 77-201.01, R. R. S. 1943, provides that all intangible property in this state not

expressly exempt from taxation shall be subject to taxation and valued and assessed at actual value. Section 77-107, R. R. S. 1943, reads as follows: "The word 'credits' includes corporation shares of stock, accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind, other than real estate mortgages, securities, debentures, bonds, other than those of the United States, annuities, and all other demands for labor or other valuable thing, whether due or to become due." Both of these sections indicate that credits are to be taxed and there is no suggestion of deducting therefrom one's debts to another.

We conclude that the Legislature intended by transferring "book accounts" to Class A in section 77-701, R. R. S. 1943, to include therein those accounts, demands, claims, and credits which are not usually evidenced by written acknowledgment.

We further hold that in listing such "book accounts" for taxation under said section the taxpayer cannot deduct therefrom his accounts payable or debts owed by him to others.

The second question involved in these cases is whether the taxpayers may deduct from their "book accounts," as provided in said section 77-701, R. R. S. 1943, their accounts receivable from school districts organized as public bodies under the laws of the state under the theory that they are exempt from taxation. Article VIII, section 2, of the Constitution reads, so far as concerns us here, as follows: "The property of the state and its governmental subdivisions shall be exempt from taxation. * * * No property shall be exempt from taxation except as provided in the Constitution."

Although obligations or debts of the state or its governmental subdivisions are not, properly speaking, property of either, it has been held that certain of their obligations are instrumentalities of the state or its subdivisions and in the hands of their creditors are not subject to taxation. This ruling has been approved by this

court and those of sister states. Allied Contractors, Inc. v. Board of Equalization, 113 Neb. 627, 204 N. W. 374; Droll v. Furnas County, 108 Neb. 85, 187 N. W. 876, 26 A. L. R. 543; Penick v. Foster, 129 Ga. 217, 58 S. E. 773, 12 L. R. A. N. S. 1159, 12 Ann. Cas. 346. All of these cases involve either the bonds or warrants of the state or its subdivisions. The bonds of the state and its subdivisions are now excepted from the requirement to be listed and taxed by express provisions of section 77-701, R. R. S. 1943.

The matter is discussed in Droll v. Furnas County, *supra*, as follows: "The funds of a city must be used either for some governmental purpose, or for some other purpose authorized by the legislature, and such obligations, issued in order to effectuate such a purpose, are instrumentalities of the government. After presentation and registration they draw interest at a fixed rate. The money to pay the interest must be collected by taxation. It is self-evident that an investor is concerned mainly with the net returns upon his investment, and if the state or its municipalities issues a security drawing a certain rate of interest, and at the same time taxes the owner of the security a given rate, his net return is the difference between the amount of taxes paid thereon and the amount of interest received. * * * If such securities are held to be taxable, the inevitable result will be that the rate of interest must be increased. If the rate of interest is increased, additional taxes would be required to pay it. No practical benefit would be derived."

In most cases holding the bonds or warrants exempt from taxation the ruling is based on the same line of reasoning, in brief, that it would require higher interest and in turn more taxes.

Plaintiff companies now seek to have this rule extended to include accounts receivable held by creditors of the state and its subdivisions not drawing interest and not always liquidated claims. They cite certain definitions in dictionaries stating that an account receivable

is an obligation no less than a warrant. From there they argue for a favorable decision broadening and extending the ruling to include such accounts.

This question has not been passed on by this court. The plaintiffs have not cited any case holding such accounts exempt form taxation. The defendants however have cited authority to the contrary. See Smith v. Davis, 323 U. S. 111, 65 S. Ct. 157, 89 L. Ed. 107, in which the Supreme Court of the United States held that open accounts held by taxpayers against the federal government were subject to taxation by the states. That court in the case cited said: "In the first place, an open account claim against the United States does not represent a credit instrumentality of the federal government within the meaning of this constitutional immunity. The record here reveals only that petitioners claim that the United States owes them $29,831.10, which amount is carried by them as an account receivable and 'is in the nature of an open account.' * * * Conceivably the amount claimed to be due is incorrect or is subject to certain defenses or counterclaims by the United States, necessitating further settlement or adjustment. Such a unilateral, unliquidated creditor's claim, which by itself does not bind the United States and which in no way increases or affects the public debt, cannot be said to be a credit instrumentality of the United States for purposes of tax immunity.

"In these respects a mere open account claim differs vitally from the type of credit instrumentalities which this Court in the past has recognized as constitutionally exempt from state and local taxation. Such instrumentalities in each instance have been characterized by (1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates and (4) specific Congressional authorization, which also pledged the faith and credit of the United States in support of the promise to pay." See, also, Davis v. Smith, 197 Ga. 95, 28 S. E. 2d 148.

In 84 C. J. S., Taxation, § 206, p. 393, it is said: "The implied immunity of one government and its agencies from taxation by the other should be narrowly restricted, and it has been stated that the decisions extending the scope of immunity have met with increasing disfavor. So, the doctrine of immunity has been said not to be undergoing a process of expansion; rather, the more recent cases indicate a tendency to restrict more sharply than ever the various exemptions which arise out of the doctrine."

In Todd v. County of Box Butte, 169 Neb. 311, 99 N. W. 2d 245, this court said: " '* * * statutes exempting property from taxation should be strictly construed, and one contending that his property is exempt from such tax must show clearly that he is within the exceptions provided by statute.' "

We hold that open accounts not bearing interest and not liquidated in the hands of a creditor of a governmental subdivision are not exempt from taxation.

It follows that the rulings of the district court were proper and its rulings in these two cases are affirmed at appellants' costs.

AFFIRMED.