# Richmond.

## THE COMMONWEALTH V. MAURY.

### FEBRUARY 10th, 1887.

### Absent, LEWIS, P.

1. STATE—*Power of taxation—State bonds—Coupons.*—The State is entitled to tax all persons, property and business within its jurisdiction, unless restrained by contract, expressed or implied. This includes the right to tax the bonds and the coupons attached thereto, which the State has issued, the funding act and the bonds and coupons under it issued constituting no contract that they shall be non-taxable. *Murray* v. *Charleston*, 90 U. S. 432.

2. IDEM—*Tax on sales of property—Non-taxable—Taxable.*—A tax on the business of selling property is a tax on the property itself. If the property be non-taxable, there can be no tax on the business of selling it. Otherwise, where the property is taxable.

3. IDEM—*Constitution of United States—Virginia Constitution.*—Act of March 15th, 1884, requiring payment of special license tax of $1,000, for privilege of selling coupons cut from the State bonds and imposing tax of twenty per cent. on the face value of such coupons when sold, is not repugnant to the United States and the State Constitutions, wherein they forbid the passage of laws impairing the obligation of contracts.

4. IDEM—*Cases distinguished.*—*Hartman* v. *Greenhow*, 102 U. S. 672, decided that the act of this State, passed in 1876, imp sing a tax on *the State bonds*, and requiring that tax to be deducted from *the coupons*, when tendered by parties other than the holders of the bonds, in payment of their taxes or other dues to the State, was unconstitutional. But it did not decide that the State could not tax either the bonds or the coupons.

Error to a judgment of the hustings court of the city of Richmond, rendered July 21st, 1884, upon an indictment

against R. L. Maury for unlawfully selling coupons cut from bonds of the State of Virginia, without having first obtained the license required by law.

The defendant moved the court to quash the indictment upon the ground that the statute on which the indictment was founded is repugnant to both the Constitution of the United States and the Constitution of Virginia. The hustings court sustained this motion, and the Commonwealth excepted and obtained a writ of error and *supersedeas* from one of the judges of this court.

The statute in question reads as follows: "No person shall sell tax-receivable coupons [cut] from bonds of the State of Virginia without a special license, for which privilege he shall pay one thousand dollars for each office or place of business kept for that purpose. In addition thereto, he shall pay to the State a tax of twenty per centum upon the face value of all the tax-receivable coupons sold by him. At the time of making such sales he shall give to the purchaser a printed certificate signed by him, stating the fact that he has sold such coupons to the purchaser, naming him. The certificate shall also contain the number and amount of the said coupons, and the date of the sale. Whenever such coupons are tendered for taxes, the broker's receipt shall be delivered to the collector. The said collector shall preserve the same until the first day of the following month, when he shall collect the said tax of twenty per centum from the said broker. But any stock-broker may purchase such coupons for the purpose of funding them in the new three per cent. bonds of Virginia." See sec. 65, ch. 450, Acts 1883–4, p. 490.

*R. A. Ayers*, Attorney-General, and *W. R. Meredith*, for the Commonwealth.

*George Bryan*, for the defendant in error.

RICHARDSON, J., delivered the opinion of the court.

In the view taken of the question, this section need only be subjected to the test of the fourteenth section of the fifth article of the Virginia Constitution, which, among other things, provided that: "The General Assembly shall not pass  *  *  * any law impairing the obligation of contracts"; and of the tenth section of the first article of the Federal Constitution, which is to the same effect.

The history of the State debt of Virginia, and of the legislation attempting its settlement, and of the action of the State and federal courts touching that legislation, are matters of well known judicial cognizance, and need not be repeated here. Suffice it to say, that before the civil war the State issued bonds to a large amount, the interest on which was promptly paid.    After the war, from causes well understood, the interest payments ceased, or became irregular, and have remained in a condition of harassing uncertainty.    During the war, and against Virginia's consent, the old Commonwealth was dismembered, and a portion of her territory erected into the new State of West Virginia, which, in common justice, should have assumed its portion of the debt, but did not.    So, the State of Virginia, by an act of her legislature passed March 30, 1871, undertook a separate adjustment with her creditors.    This act is known as "the Funding Bill of 1871."    It provided that the holders of the bonds of the State might fund two-thirds thereof in six per cent. coupons or registered bonds of the State, to run for thirty-four years, payable, like the coupons, to the bearer.

The coupons were payable semi-annually, and receivable, at and after maturity, for all taxes, debts, dues and demands due the State; and this was so expressed on their face.    But it must be remembered that, in issuing said bonds and coupons,

the legislature, neither in terms nor by any just inference, made *any contract* that the bonds and coupons should not be subject to taxation as other property taxed by the State.

Under said funding act of 1871, a number of creditors surrendered their old bonds and took new bonds with coupons attached. It was held by this court in *Antoni* v. *Wright*, 22 Gratt. 833, that thereby a contract was formed which was irrepealable, without the consent of both parties, and made it obligatory on the State to receive the coupons for their full amount from the bearer for any taxes, debts, dues and demands due to the State, it being considered that such receivability constituted their chief value. But this court did not there hold, nor has it, nor has the Supreme Court of the United States, any where, or at any time, held that thereby was created any contract, expressed or implied, that the State should not tax the bonds or the coupons as she taxed other property.

In 1876 the legislature passed an act imposing a tax on *the bonds,* and requiring that tax to be deducted from *the coupons,* when tendered by parties other than the holders of the bonds, in payment of their taxes or other dues to the State. And this act was held by the Supreme Court of the United States in the case of *Hartman* v. *Greenhow,* 102 U. S. 672, to be unconstitutional. But, we repeat, that court did not decide, directly or indirectly, that the State had surrendered its right to tax either the bonds or the coupons.

Nevertheless, for the defendant in error, it is contended that that court, in that case, decided that the State could not tax the coupons; that they were a non-taxable article, and that it had repeatedly decided that the tax on the business of selling an article is a tax on the article itself. Citing *Welton* v. *State of Missouri,* 1 Otto, 275; *Webber* v. *Virginia,* 13 Otto, 350, and from these and like decisions, assuming that taxing the business of selling the coupons is a tax on the coupons themselves, therefore the State cannot tax the business of selling them.

If the premise was correct, the conclusion would also be correct. The premise, however, is not correct. That court did not decide that the State could not tax the coupons. A brief examination of *Hartman* v. *Greenhow* will demonstrate the accuracy of our position. That case arose under the said act of 1876. The decision amounted to this and nothing more: "That the Virginia act of 1876, requiring the tax on the bonds issued under the funding act of 1875, *to be deducted from the coupons* originally attached to them, when tendered in payment of taxes or other dues to the State, *cannot be applied* to coupons separated from the bonds, and *held by different owners*, without impairing the contract with *such* bondholders, contained in the funding act, and the contract with the bearer of the coupons." See 102 U. S., page 685.

So far was the Supreme Court of the United States from deciding that the State could not impose a tax on the bonds, or on the coupons, that it expressly declined so to decide. In that case, at page 683 (102 U. S.), the court says: "The power of the State to impose a tax on her own obligations is a subject upon which there has been a difference of opinion among jurists and statesmen. * * * In the case of *Murray* v. *Charleston,* 90 U. S. 432, there are many pertinent and just observations on this subject, which it is not material to repeat, for *the question* is *not* necessarily involved in the case before us." And in the case referred to, at page 445, the Supreme Court, *per* Mr. Justice Stong, said: "Is, then, property, which consists in the promise of a State, or of a municipality of a State, beyond the reach of taxation? We do not affirm that it is. A State may undoubtedly tax any of its creditors within its jurisdiction for the debt due to him, and regulate the amount of the tax by the rate of interest the debt bears, if its promise remains untouched. A tax thus laid impairs no obligation assumed. It leaves the contract untouched."

Opinion.

This language of the Supreme Court is of no doubtful import, nor can it be strained from its one plain meaning. Certainly, then, it cannot be successfully contended that, in either *Murray* v. *Charleston* or *Hartman* v. *Greenhow*, it was held that the State cannot put a tax on her obligations—either a direct tax or an indirect tax, by taxing the business of selling those obligations. And it is safe to predict that no such decision can, or will ever, be made, except in instances where the State attempts to impose a tax on property beyond her jurisdictional limits, or where the State has expressly or impliedly contracted not to impose such a tax. Because, it is settled doctrine that the power of taxation, being vast in its character and searching in its extent, embraces necessarily all subjects within the jurisdictional limits of the State; and that these subjects of taxation are persons, property and business. As applied to them, the power of taxation may be exercised in a variety of ways, and may touch property in every shape, and business in the almost infinite variety of forms in which it is conducted, in professions, in commerce, in manufacture, and in transportation. And unless restrained by some provision of the Federal Constitution, the power of the State, as to the mode, form and extent of taxation, is unlimited, where the subjects to which it applies are within its jurisdiction. See *Cleveland R. R. Co.* v. *Pennsylvania*, 15 Wall. 320.

In a word, then, the power of taxation is a part of the legislative sovereignty of the State. It existed when the bonds and coupons were issued, they having, in fact, been issued subject to this power of taxation, which was not in any way released or surrendered by their issuance, and being the *lex temporis*, is part and parcel of the bond and coupon contract. If this power of taxation was not expressly reserved, it matters not. For, it need not be reserved; it exists and remains always, unless yielded up. See Cooley on Taxation, 54, note 2.

Then, what though the tax imposed on the business of selling the coupons be a tax on the coupons themselves. The State is entitled to tax all persons, property and business within its jurisdiction. The business is done, or proposed to be done here, within the jurisdiction of the State; and that business is a legitimate subject of taxation. How, then, can it be said that the statute of 1883–4, which imposes a tax on the doing of the business of selling the coupons, is beyond the limits of the constitutional legislative powers of the State and void?

We have carefully examined all the authorities cited in support of the positions contended for by the defendant in error, as well those cited by his counsel as those cited by the learned judge of the hustings court in his printed opinion, reported in the Virginia Law Journal, 1884, p. 494; and we can find nothing in them to sustain the decision of the court below; which decision has for its sole foundation the unwarranted and erroneous assumption that the State is without power to tax the coupons.

True it is, that these authorities do establish the proposition that a tax on the business of selling an article is a tax on the article itself, and that, therefore, a tax imposed on the sale of a *non-taxable* article is unconstitutional and void. But that proposition is not denied. In fact, it is a *concessum* in this opinion and is perfectly consistent with the views herein presented and with the conclusion arrived at.

For these reasons, this court is of opinion that the statute of 1883–4, under which the indictment in this case was found, is constitutional and valid, and that the judgment of the hustings court, quashing that indictment is erroneous, and must be reversed and annulled, and the case remanded to said court for further proceedings in conformity with the law and the views herein expressed.

JUDGMENT REVERSED.