Droll v. Furnas County.

---

LAURA V. DROLL ET AL., APPELLANTS, V. FURNAS COUNTY ET AL., APPELLEES.

FILED MARCH 28, 1922.   No. 22329.

1. Taxation: EXEMPTIONS: CITY WARRANTS. Warrants issued by a governmental subdivision of the state for a lawful purpose are instrumentalities of the government.

2. ———: ———. Section 2, art. VIII of the Constitution, as amended in 1921, which provides, among other things, "The property of the state and its governmental subdivisions shall be exempt from taxation," and "No property shall be exempt from taxation except as provided in this section," does not permit the taxation of any of the property or instrumentalities of the government of the state, or of any of its governmental subdivisions.

3. ———: ———. To construe the Constitution as allowing the taxation of bonds or warrants of governmental subdivisions would raise the rate of interest which such subdivisions would be compelled to pay in carrying on their activities, and the funds and property of the issuing bodies would inevitably and materially be affected by the imposition of the tax. Taxes would be required to be increased to meet the increased expenditures thus created by taxation, and a conflict would arise between the borrowing and taxing powers of the state or its municipalities.

4. ———: ———. Unless plainly provided by a constitutional provision, public property and the instrumentalities of government are not subject to taxation.

5. ———: ———. To construe the Constitution so as to hamper or impede the function of government by compelling it to tax its own instrumentalities in order to obtain money to discharge its own obligations would þe unreasonable.

APPEAL from the district court for Furnas county: CHARLES E. ELDRED, JUDGE. *Reversed.*

*Lambe & Butler* and *Walter D. James,* for appellants.

*John Stevens, contra.*

Heard before LETTON, DAY and DEAN, JJ., BLACKLEDGE and TEWELL, District Judges.

LETTON, J.

Appellants are the owners of certain registered warrants of the city of Beaver City, Nebraska. The warrants were issued for money used in the extension and repair of the water and light plant owned by the city. The assessor listed the warrants in the hands of the holders for taxation for the year 1921. The petitioners allege that such warrants are not taxable under the Constitution of the state and pray that they be declared to be exempt from taxation. A demurrer to the petition was sustained and the cause dismissed.

At the time the assessment was made the provisions of the Constitution, as amended in 1921, relating to revenue were in force. Section 1, art. VIII, provides: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property. Taxes, other than property taxes, may be authorized by law. Existing revenue laws shall continue in effect until changed by the legislature."

Section 2, art. VIII, provides: "The property of the state and its governmental subdivisions shall be exempt

from taxation," and, after naming several specific exceptions, "No property shall be exempt from taxation except as provided in this section."

No new legislation as to this subject was in effect at the time the assessment was made. The provisions of the Revised Statutes of 1913, then in force under the provisions of section 1, art. IX, Const. 1875, are as follows:

Section 6290. "The term 'personal property' includes every tangible and intangible thing which is the subject of ownership and not real property as defined in the next preceding section."

Section 6293. "The word 'credit' includes every demand for money, labor or other valuable thing, whether due or to become due."

What is the proper construction to be given these provisions? Very early in the history of this country, analogous questions involving the same fundamental principles arose and were presented to the courts. The power of the United States to tax the obligations and securities of state governments, and the power of the several states to tax the obligations of the federal government, were each denied in a series of logical and convincing opinions in the United States supreme court. *McCulloch v. State of Maryland,* 4 Wheat. (U. S.) 316; *Weston v. City Council of Charleston,* 2 Pet. (U. S.) *449; *People of New York v. Commissioners of Taxes,* 2 Black (U. S.) 620; *Collector v. Day,* 11 Wall. (U. S.) 113; 1 Cooley, Taxation (3d ed.) 130.

But these decisions do not determine the question here presented. Under the constitutional provisions quoted, the state may not tax the property of the state, or its governmental subdivisions. Neither can it tax bonds and obligations of the United States, though there is no provision in the Constitution allowing such exemption. These are exempt, not by the language of the Constitution, but by necessary implication, although the Constitution provides that "No property shall be exempt from taxation except

as provided in this section," and such securities are not excepted. The language of that instrument, therefore, is subject to construction. *State v. Board of Assessors,* 35 La. Ann. 651.

The property of the state or its governmental subdivisions is exempt from taxation. Bonds, warrants, or other like obligations issued by the state or its subdivisions are not, in one sense, the property of the state or municipality issuing them, but, in another and most important sense, they partake of the nature of such property. They are instrumentalities of the government issued for a public purpose.

Shylock said:

. "You take my house when you do take the prop
That doth sustain my house; you take my life
When you do take the means whereby I live."

When the state attempts by the process of taxation to reach the income from such securities, it inevitably depreciates their market value. In order to make them marketable, the rate of interest paid by the issuing body must be increased; this directly affects the property of the governmental subdivision, and its means of carrying on the functions for which it was called into being. In *Weston v. City Council of Charleston,* 2 Pet. (U. S.) *449, Chief Justice Marshall pointed out that, where the power is given to borrow money, "the right to tax the contract to any extent when made, must operate upon the power to borrow, before it is exercised, and have a sensible influence on the contract."

The supreme court of the United States holds that a tax upon the proceeds of a lease of Indian lands is "a tax upon the power to make them, and could be used to destroy the power to make them," and is invalid as a tax upon an instrumentality of the United States. *Indian Territory Illuminating Oil Co. v. State of Oklahoma,* 240 U. S. 522. In *Gillespie v. State of Oklahoma,* 42 Sup. Ct. Rep. 171, the court said: "The same considerations that invalidate a

tax upon the leases invalidate a tax upon the profits of the leases, and, stopping short of theoretical possibilities, a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards. *Weston v. City Council of Charleston,* 2 Pet. (U. S.) \*449, \*468." See *Farmers & Mechanics Savings Bank v. State of Minnesota,* 232 U. S. 516.

The funds of a city must be used either for some governmental purpose, or for some other purpose authorized by the legislature, and such obligations, issued in order to effectuate such a purpose, are instrumentalities of the government. After presentation and registration they draw interest at a fixed rate. The money to pay the interest must be collected by taxation. It is self-evident that an investor is concerned mainly with the net returns upon his investment, and if the state or its municipalities issues a security drawing a certain rate of interest, and at the same time taxes the owner of the security a given rate, his net return is the difference between the amount of taxes paid thereon and the amount of interest received.

The reports of the auditor of public accounts of this state show that there are outstanding public bonds of governmental subdivisions of the state drawing interest at as low a rate as $4\frac{1}{2}$ per cent. At this time $5\frac{1}{2}$ or 6 per cent. is perhaps the most common rate of interest on such securities outstanding. The rate of taxation for all purposes in some of the cities of the state is as high as 2.75 per cent. upon the valuation of property, assessed, as it now is, at its actual value. In such a city the resident holder of a $4\frac{1}{2}$ per cent. security would receive less than 2 per cent. on his investment, and the owner of a 6 per cent. security would receive less than 3 per cent. If such securities are held to be taxable, the inevitable result will be that the rate of interest must be increased. If the rate of interest is increased, additional taxes would be required to pay it. No practical benefit would be derived. The operation of local government would be hampered and im-

peded and the funds and property of the issuing body materially affected. The majority of courts before whom this question has been directly presented have held that, unless it is clearly shown by apt language that to tax such instrumentalities of government was intended, the language of the Constitution will not be so construed. Though some of the cases involve the taxation of state bonds, there is no difference in principle, even though the obligations are in the form of warrants issued by a municipality or other governmental subdivision having taxing power.

In *Penick v. Foster*, 129 Ga. 217, 12 L .R. A. n. s. 1159, after pointing out that municipal corporations within certain limits may exercise sovereign powers, the court say: "The government, whether it be the state or one of its political subdivisions, is dependent for the due exercise of its powers on certain instrumentalities needful and proper in the matter with which it is dealing. Credit is absolutely indispensable to any government, whether it exists in the form of a state government or in the form of the government of one of the political subdivisions of the state. It becomes necessary, in the life of a state, as well as of its political subdivisions, to be able to establish credit in order to carry on successfully and properly the governmental functions. One of the most usual and ordinary methods of using the credit of a government is by the issue of securities and placing them in the markets of the world for sale."

The first paragraph of the syllabus in the case sums up the situation well and forcibly as follows: "The general rule is that public property and the various instrumentalities of government are not subject to taxation. This immunity rests upon the most fundamental principles of government; being necessary in order that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself."

In *National Surety Co. v. Starkey*, 41 S. Dak. 356, it is

said: "If we were to consider the bonds before us merely as property and disregard the purpose for which they were issued—disregard the fact that they are governmental instrumentalities—we should hold them taxable; but, when we regard them, not merely as property, but as **governmental instrumentalities** of a sovereign state, a superior intervening public policy grounded upon one of the sovereign powers of the state compels us to the conclusion (there being no express language in the Constitution to the contrary) that the public securities of a state, and of its counties and municipalities, were not intended to be included either in the term 'property' or the term 'bond' as such terms are used in that article of our Constitution relating to taxation."

The following cases are to the same effect: *State v. Board of Assessors*, 111 La. 982; *Miller v. Wilson*, 60 Ga. 505; *Mercantile Bank v. New York*, 121 U. S. 138; *In Re Assessment of First Nat. Bank*, 58 Okla. 508, L. R. A. 1917B, 294; *Macon v. Jones*, 67 Ga. 489.

There are a few early cases holding such securities taxable. In these cases the question as to the character of the obligations as instrumentalities of government was not presented to the courts. The decisions depend in large measure upon the varying language in different constitutions and statutes; but, except in the case of *State Nat. Bank v. City of Memphis*, 116 Tenn. 641, 7 L. R. A. n. s. 663, the majority of later cases are in accord with these views. In a later Tennessee case, *Keith v. Funding Board*, 127 Tenn. 441, involving the same question, two judges wrote dissenting opinions.

We conclude that under the Constitution, as amended in 1921, such securities are not subject to taxation while in the hands of residents of this state. The judgment of the district court is

REVERSED.