# CHARLESTON.

STATE v. R. L. PAGE, *Admr.*

(No. C. C. 339)

Submitted October 13, 1925.  Decided October 20, 1925.

1. TAXATION—*Statutory Penalty for Failure of Property Owner to Return Property for Taxation Held Valid.*

   The penalty imposed by section 73, chapter 29 of the Code, for failure of the property owner to make return of his property for taxation, is constitutional and valid.  (p. 167.)

   (Taxation, 37 Cyc. p. 1542.)

2. SAME—*Subsequent Entry on Property Book of Personal Property Omitted in Former Years Held Not to Relieve Defaulting Taxation From Statutory Penalty.*

   The subsequent entry on the property book of personal property omitted in former years, pursuant to sections 25 and 109 of chapter 29, and the levying of taxes against the same with interest, does not relieve the defaulting taxpayer from the penalty imposed by said section 73.  The statute in terms imposes the penalty in addition to the taxes.  (p. 172.)

   (Taxation, 37 Cyc. p. 1546.)

3. SAME—*Where Delayed Return is Made and Property is Entered on Property Book Before End of Assessment Year, Taxpayer is Not Liable for Statutory Penalty.*

   But where a delayed return is made, and the property is entered on the property book before the end of the assessment year, the taxpayer will not be liable to the penalty imposed by the statute.  (p. 173.)

   (Taxation, 37 Cyc. p. 1545.)

4. SAME—*Bonds by Political Subdivisions of State Not Exempted From Taxation by Law or Contract Held Taxable by State.*

   Bonds issued by the political subdivisions of this state, not exempted from taxation by law or by contract, are taxable by the state in the same manner as other property.  (p. 175.)

   (Taxation, 37 Cyc. p. 884.)

5. SAME—*Suit to Enforce Penalty for Failure to Return Property for Taxation May be Maintained Against Administrator of Defaulting Taxpayer's Estate.*

   A suit to enforce the penalty provided by section 73 of

chapter 29 of the Code, may be maintained against the administrator of the estate of the defaulting taxpayer. (p. 177.)

(Taxation, 37 Cyc. p. 1546.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Certified questions from Circuit Court, McDowell County.

Proceeding by notice of motion, pursuant to Code, c. 29, § 73, by the State against R. L. Page, administrator of J. A. Huddleston, deceased, to recover penalty for failure to return property for taxation. After overruling defendant's demurrer to the motion, and plaintiff's demurrer to defenses set up in the answer, return, and plea to the motion, and sustaining the demurrer as to other defenses, the trial court certified questions arising on its rulings.

*Ruling modified.*

*G. L. Counts,* Prosecuting Attorney, and *Jno. T. Simms,* for State Tax Commissioner.

*Strother, Sale, Curd & Tucker,* and *Poffenbarger, Blue & Dayton,* for defendant.

MILLER, JUDGE:

This proceeding was instituted, by notice of motion, pursuant to the provisions of section 73 of chapter 29 of the Code, by the prosecuting attorney of McDowell County, against the administrator of the estate of J. A. Huddleston, deceased, to recover for the benefit of the State the penalty or forfeiture imposed by the statute, by reason of the failure of said Huddleston to return for taxation certain personal property for the years 1920, 1921, 1922, 1923 and 1924. The circuit court overruled defendant's demurrer to plaintiff's motion; and overruled plaintiff's demurrer to certain defenses set up in defendant's answer, return and plea to said motion, but sustained said demurrer as to certain other defenses. The questions arising on the rulings of the circuit court have been certified to us for decision.

That part of section 73 of chapter 29 of the Code, governing the questions certified, is as follows:

"If any person, firm or corporation, including the public service corporations, named in section one hundred and eighteen of this chapter, required by law to make return of property for taxation, whether such return is made to the assessor, the board of public works, or to any other assessing officer or body, fails to return a true list of all property which should be assessed in this state, including moneys, credits and investments, such person, firm or corporation, in addition to all other penalties provided by law, shall forfeit ten per centum of the value of the property not returned and not otherwise taxed in this state. A forfeiture may be enforced for any such default occurring in any year not exceeding five years prior to the time the same is discovered. Each failure to make a true return as required herein, shall constitute a separate offense, and a forfeiture shall apply to each of them, but all such forfeitures to which the same person, firm or corporation is liable, shall be enforced in one proceeding against such person, firm or corporation, or against the estate of such deceased person, and shall not exceed fifty per centum of the property not returned. It shall be the duty of the state tax commissioner, or prosecuting attorney of the county in which the defaulting taxpayer resides, or in which such property should have been returned, to enforce the collection of the same in the name of the State of West Virginia against the defaulting taxpayer, or in case of a decedent, his personal representative, in the circuit court, upon motion, whereof the defendant shall have at least twenty days' notice. Either party shall have the right to have the issue tried by a jury, and the state as well as the defendant, shall have the right to an appeal."

First: Defendant contends that the statute above' quoted is unconstitutional and void; that it violates the provision of the constitution of the United States prohibiting "excessive fines", and the provisions of the state constitution prohibiting "excessive fines", and providing that "penalties shall be proportioned to the character and degree of the offense."

The presumption is always in favor of the constitutionality of a law enacted by the Legislature, and the courts must be

slow and cautious to overthrow legislative action. The legislature is the supreme law making power, and it can enact any law, where it is not prohibited by state or federal constitution in express terms or by very strong implication. 3 Enc. Dig. Va. & W. Va. Rep. 161-164; Id. 2 Cum. Sup. 36-39; and the many cases cited. It is our duty, therefore, if we can do so, to uphold the validity of the statute in question.

When not limited by the constitution, the power of the state, acting through its governmental agencies, to tax its citizens, is absolute and unlimited as to persons and property. This doctrine, as said by Mr. Gray in his work on Limitations of the Taxing Power, is evolved in the general theory of the state. The state exists for the purpose of securing the life, liberty and property of its citizens, and may, within the limits prescribed by the constitution, exhaust, all the resources of private property in support and preservation of that existence. Gray on Limitations of the Taxing Power, sec. 44; Cooley's Constitutional Limitations (7th ed), 678; 1 Cooley on Taxation (4th ed.), sec. 72; *McCullough* v. *Maryland,* 4 Wheat. 316, opinion by Mr. Chief Justice Marshall. The power of taxation is an incident of sovereignty, and is possessed by the state without express authority conferred by the people. 1 Cooley on Taxation, sec. 64; 13 Enc. Dig. Va. & W. Va. Rep. 78. The power of taxation lies exclusively in the legislative department of the state; and it has been said that: "The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is the subject of any restrictions whatever, except such as rest in the discretion of the authority which exercises it." Cooley, Const. Lim. 678. See, also, *McCulloch* v. *Maryland, supra;* and 13 Enc. Dig. Va. & W. Va. Rep. 78. The plenary power of the legislature to levy and collect taxes is not questioned here, nor can it be questioned; but what we have just said clearly demonstrates the extent to which the legislative power can be extended in providing for the necessities of the state.

To make effective the power to levy and collect taxes, the state must necessarily have the power to discover and assess property on which to levy such taxes; and if no penalty at-

taches to the tax payer's failure to return a true list of his property and to disclose its character and value to the officer whose duty it is to make the assessment, the tax payer could readily conceal certain classes of property and suffer no loss when the property is discovered, for the state could then do no more than collect the taxes due. "Statutes imposing penalties for failure or refusal to make such returns or to return such lists are quite common, and have been uniformly upheld. *Washington* v. *Commonwealth,* 2·Va. Cas. 258; *Commonwealth* v. *Byrne,* 20 Gratt. 165; *State* v. *Bell,* 1 Phil. (N. C.) 76; *Commonwealth* ·v. *Cooke,* 50 Pa. St. 201; *City of Hartford* v. *Champion,* 58 Conn. 268; and 25 Am. & Eng. Enc. Law, 206." *Iverson Brown's Case,* 91 Va. 762, 769. Such statutes have been held valid in many other states. Cooley, Const. Lim. (7th ed.), 748-750, and notes; Gray, Taxing Power, sec. 1217; 3 Cooley on Taxation (4th ed.), sec. 1092; *Western Union Tele. Co.* v. *State,* 146 Ind. 54; *Western Union Tele. Co.* v. *Indiana,* 164 U. S. 304; *Ex parte Lynch,* 16 S. C. 32.

Is, then, the penalty imposed by the statute under consideration so excessive or disproportionate to the character and degree of the offense created thereby, that the courts can say that the legislature exceeded its powers, under the constitution? In view of what we have said regarding the power of the legislature to levy and collect taxes, and the reasons given for conferring on the lawmaking body so great a power, is it not within the province of that body to determine the character and degree of the offense of one who refuses to contribute his share of the expenses of the state government? Perhaps the first duty of the legislature is the preservation and security of the state. There is no way by which· the legislature can provide for the maintenance of the agencies of the government, but by taxation. If in any way the taxing power is interferred with, the whole system of government is impaired. The taxing power would be ineffectual, without the means of enforcing the laws in relation thereto. The legislature must provide for the assessment of property and the collection of taxes, and does it not necessarily follow, that it is within the province of that body to prescribe the method by which ·such assessment and collection shall be enforced,

even to the extent of the penalty that may be imposed for
failure or refusal on the part of a property owner to return
his property for taxation or to pay the taxes levied? Con-
cealing property is a graver offense against the state than
refusal or failure to pay taxes. When the property has been
assessed and the amount of taxes ascertained, it is a com-
paratively easy matter to enforce collection; but if the prop-
erty is concealed, in many cases the state has no means of
discovering it, and the owner goes free. The legislature has
found it necessary to impose a penalty, to compel tax payers
to make returns of their property; and who is to say what
that penalty shall, or ought to be? ''The legislature is the
judge of the expediency of creating new crimes, and of pre-
scribing penalties, whether light or severe.'' *Commonwealth*
v. *Murphy* (Mass.), 30 L. R. A. 734, 52 Am. St. Rep. 492.
''The power of the legislature to prescribe the punishment
for the offense is very broad, and much must be left to the
judgment of that body as to what punishment will be ade-
quate for the purpose of deterring others from the commis-
sion of crime, and for the reformation of the offender.'' *State*
v. *Knosky*, 87 W. Va. 558. See, also, *State* v. *Graham*, 68 W.
Va. 248, 70 W. Va. 793.

In *State* v. *Woodward*, 68 W. Va. 66, it was held that a
judgment, ''that defendant pay a fine of $50.00, and be con-
fined in jail for six months, and that his liquor license be re-
voked, and that the room where he sold and kept liquors for
sale should not be used for the sale, storage or manufacture
of such liquors for one year after the date of the judgment,''
was not unconstitutional as imposing punishment dispropor-
tionate to the offense, or depriving one of property without
due process of law, where the statute provided that such room,
''shall be kept securely closed and locked on said first day of
the week,'' and the evidence was only that defendant opened
and entered his place of business on a Sunday. In the opin-
ion in that case Judge BRANNON fully discusses the question of
excessive fines, cruel and unusual punishment, and penalties
disproportionate to the character and degree of the offense
charged. In *Commonwealth* v. *Byrne, supra*, at page 195, it
is said: ''The power to arrest the person may not be so often

given by tax laws as the power to distrain property; but a power to arrest the person is often given by such laws, and is sometimes necessary to make them efficient; and whenever it is necessary, the Legislature, which is charged with the important duty of raising revenue for the support of government, may constitutionally confer such power. * * * But it is objected that imprisonment may be perpetual under this law, as it makes no provision for the discharge of the prisoner, even though he be solvent. If this be true, it may show the law to be harsh in its operation, but does not therefore show it to be unconstitutional. It may be a bad exercise of legislative discretion, but not an excess of legislative power. The courts may control the latter, but have nothing to do with the former.''

Second: It is said that the subsequent entry of the property for taxation, as provided by sections 25 and 109 of chapter 29, and the levying of taxes on the same, with interest, relieves the property from the penalty imposed by section 73. But section 73 specifically says that the penalty therein provided for shall be ''in addition to all other penalties provided by law.'' Section 109 requires the assessor upon discovering that taxes upon any personal property were omitted in any former years, not exceeding five, to enter the same, with interest thereon, in his personal property book. And section 25, in addition to requiring the assessor to make such entry, imposes a penalty upon him for failure to make such entry, upon the discovery of the omission. If the property owner is to be relieved from the penalty imposed by section 73 by the subsequent entry and payment of taxes, when, then, could the penalty be imposed? Only in case the property is discovered and the assessor violates the statute by refusing to enter the same for taxation. If the property is discovered, it must be taxed, in addition to the penalty. The statute is plain. It was the manifest intention of the legislature to collect the taxes, with interest at six per centum per annum, and at the same time to enforce the penalty, not that the penalty is to take the place of the taxes, or the payment of taxes with interest to relieve from the penalty. The penalty is imposed for failure to make return of the property for taxation. It is

said that a waiver may be implied where the state accepts the taxes, and some authority is cited for this proposition. This may be true in the absence of a statute on the subject, or where the statute so provides or may be so construed, but such construction can not be placed on our statute: its terms are plainly to the contrary.

But it is argued that the forfeiture applies to "the property not returned and not otherwise taxed in this state;" and that when Huddleston's property was discovered and entered for taxation, it was "otherwise taxed." Not all property is required to be returned to the assessor. The taxpayer must return all taxable property except such as is assessed elsewhere or by some other method. The property of banks, trust companies and certain other corporations is assessed in the name of the corporation; and section 78 provides that, "when the property of an incorporated company is assessed as aforesaid, no individual shareholder therein shall be required to list or to be assessed with his share, portion or interest in the capital stock of such corporation." Such property is to be assessed in the magisterial district and county in which it is located. *Bank* v. *County Court*, 36 W. Va. 341; section 64, chapter 29, Code. The expression in the statute, "not otherwise taxed in this state," excepts from the "property not returned" such property as the taxpayer is not required to return. If it lies within the state, it is "otherwise taxed" when the corporation pays the taxes in the district and county where the property is located.

The third point raised by defendant is, that the property not returned by Huddleston personally for the year 1924 was entered on the property book for that year, before the end of the assessment year, and before the time the taxes were due and payable; and that it is immaterial how or by whom the property was listed, since the State lost nothing by the delay; wherefore the penalty should not be enforced as to that year. No statute prescribes a time before which the property owner shall make return of his personal property for taxation. Section 14 of chapter 29 of the Code provides that on the first day of January of each year the assessors and their assistants shall begin the work of assessment in their respective counties, and

shall from that date, diligently and continuously pursue the same until completed; and shall finish their work and complete the land and personal property books not later than the twentieth of May. The board of equalization and review is required, by section 18 of chapter 29, to meet annually not later than the fifth day of July, and may adjourn such session from time to time until its work is completed, but shall not remain in session for a longer period than twenty-five days. The assessor is required to lay his books before the board, and to attend its sessions and assist it in making corrections and additions on his books. When the board shall have completed its work of review and equalization, the books are delivered to the assessor and the levies upon the same are extended as provided by law. The statute does not fix a time within which these extensions shall be made. By section 116 of said chapter 29, the assessor is required to present to the clerk of the county court three copies of his personal property and land books. The clerk, with the assistance of the assessor shall then examine such books and compare them with the original returns made by the property owners; and the clerk is required to point out to the assessor such errors as in his opinion exists, and every such error shall be corrected; but if the clerk and the assessor can not agree as to the propriety of such corrections, the matter shall be submitted to the prosecuting attorney of the county, and they shall conform to his decision. Section 118 of the same chapter provides that the assessor shall, on or before the twentieth day of July next ensuing, deliver one copy of each of the land and personal property books to the clerk of the county court, to be by him preserved among the records in his office, free for the inspection of any person; and these copies shall serve for laying the county levy. It will be observed that the time fixed for the delivery of these books to the clerk of the county court is before the end of the period allowed the board of equalization and review to complete its work; and the statute does not account for the time required by the assessor to extend the levies, and the time necessary for the county clerk and the assessor to make the comparisons and corrections required by section 116. And it has been, held by this court that the

requirement that a copy of the personal property book shall
be by the assessor delivered to the county clerk on or before
the twentieth day of July, is directory. *State* v. *Buchanan,* 24
W. Va. 362: see, also, *Woodyard* v. *Kuhn,* 89 W. Va. 670.
Section 119 of chapter 29, requires the assessor to turn over
to the sheriff not later than the first day of September one
copy of each book, which shall be the sheriff's guide in col-
lecting taxes; and the third copy shall be transmitted to the
state auditor not later than the first day of October.

In view of the statute, and the purpose· for which the three
copies of the property books are to be made and used, it
does not appear that the assessor, in this case, could not have
entered the property in question on his personal property
book before it was finally completed by him, and sworn
to and turned over to the proper officials. The return and
answer of Page, administrator, was sworn to on August 30,
1924, and alleges that the property had then been entered
and assessed, and that such entry and assessment was made
before any proceedings were taken by the State to declare
and enforce the forfeiture provided by the statute. The
notice of motion recites the fact that J. A. Huddleston died
on the 21st day of July, 1924, and that R. L. Page was ap-
pointed administrator of the said decedent's estate on the
24th day of July, which appointment was duly confirmed by
the county court on the —day of July, 1924. And it is not
alleged that the administrator failed or refused to make a
return for the year 1924, only that Huddleston failed to
do so.  If the property in question was actually assessed
for the year 1924 before any of the taxes for that year were
due and payable, the State has lost nothing by the late assess-
ment.  The sheriff's copies of the property books may be de-
livered to him at any time not later than the first day of
September; and these copies are the ones to be used by him
in collecting taxes. If the facts stated in the administrator's
return are true, the sheriff would be able to collect the taxes
levied on Huddleston's estate as early as he was authorized
to collect any other taxes for the year 1924. We are of opin--
ion that the facts pleaded, if true, entitle the defendant to
relief from the penalty or forfeiture imposed by section 73

of chapter. 29 as to the property which it is alleged Huddleston owned in the year 1924 and did not return for taxation in that year.

Defendant's fourth proposition is that the district road bonds, school bonds, and the bonds issued by the city of Welch, not returned for taxation by Huddleston, are exempt from taxation, on the theory that they are agencies of the state government. We do not think the authorities cited by defendant's counsel sufficient to sustain this proposition as a general rule. The question in a number of the cases cited and relied on was the power and authority of the Legislature, under the state constitutions, to tax or exempt from taxation certain bonds. The decisions in *Penick* v. *Foster*, 129 Ga. 217, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346; *Droll* v. *Furnas*, (Neb.), 187 N. W. 876, 26 A. L. R. 543; and *National Security Co.* v. *Starkey*, 41 S. D. 356, 170 N. W. 582, appear to be based upon the decisions of the Supreme Court of the United States cited in the opinions. In *Murray* v. *Charleston*, 96 U. S. 432, it was held that the city of Charleston, authorized to assess a tax of two cents upon the dollar of the value of all real and personal property in the city, could not, in lieu of levying taxes on its outstanding bonds, retain two per cent of the six per cent interest it was obligated to pay on such bonds by the terms thereof. The plaintiff in that case was a non-resident of the state. In *Farmers Bank* v. *Minnesota*, 232 U. S. 516, it was held that a state may not tax bonds issued by a municipality of a Territory of the United States. The question in *Pollock* v. *Farmers' Loan and Trust Co.*, 157 U. S. 429, involved the validity of the federal income tax law of August 15, 1894, in its application to rents and profits from real estate. There seems to be no question that it is beyond the power of a state to tax any of the instrumentalities of the federal government, or of the federal government to tax the instrumentalities of the state governments, including state or municipal bonds; but the federal cases above cited are not authority for the question here involved. In *Murray* v. *Charleston, supra,* it was said: "Is, then, property, which consists in the promise of a state, or of a municipality of a state, beyond the reach of taxation? We do not

affirm that it is.  A state may undoubtedly tax any of its creditors within its jurisdiction for the debt due to him, and regulate the amount of the tax by the rate of interest the debt bears, if its promise be left unchanged.  A tax thus laid impairs no obligation assumed.  It leaves the contract untouched.''  In the California case cited, *Napa Sav. Bank* v. *Napa County,* 17 Cal. App. 545, the court held the bonds in question to be exempt from taxation; but the constitution of that state provides that: ''All·bonds hereafter issued by the state of California, or by any county, city and county, municipal corporation or district (including school, reclamation, and irrigation districts) within said state, shall be free and exempt from taxation.''

But in a majority of the states where the question has been passed upon by the courts, it has been held that, unless exempted by their terms or by law, bonds issued by the state or by a political subdivision thereof, are taxable by the state. Note, 8 Am. & Eng. Ann. Cas. 26; 7 L. R. A. (N. S.) p. 663; 2 Cooley on Taxation, (4th ed.), sec. 572; Gray on the Taxing Power, sec. 1049; *Commonwealth* v. *Maury,* 82 Va. 883; *Hall* v. *Middlesex County,* 10 Allen (Mass.) 100; *Dep. & Savings Bank* v. *Wilkes-Barre,* 148 Pa. 601; *Bank of Russellville* v. *City of Russellville,* 133 Ky. 637, 19 Ann. Cas. 410, and cases cited.

It is not alleged in the answer that the bonds set up therein have been exempted from taxation by law.  Section 1, article 10 of the state constitution, provides that, ''all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law; * * * but property used for educational, literary, scientific, religious or charitable purposes; all cemeteries and public property may, by law, be exempted from taxation.''  By section 57, chapter 29 of the Code, the Legislature has exempted from taxation property of the United States, property belonging exclusively to the state, and property belonging exclusively to any county, district, city, village or town in the state, and used exclusively for public purposes.  But the bonds of these subdivisions of the state are not by any statute exempted from taxation.

''State and municipal bonds are looked upon merely as securities held for investment by the owner and are taxable for the same reasons that other obligations to pay money are taxable in the hands of the creditor.'' 26 R. C. L. 334. In *The Champaign County Bank* v. *Smith,* 7 Ohio St. 42, 54, it was said: ''One man invests capital in state stocks, as a source of income and profit to himself. From the same motives of interest, other capital is invested in the bonds of a private corporation, or the notes of individuals. These investments are equally taxed, *as property;* as sources of profit and income. The *consequence* is, that the profit is diminished in both cases. This is an *effect,* but not the *object* of the law imposing the taxation. It contemplates no such purpose. As between the parties the contract is left in full force; but the property invested, or acquired by the contract, is taxed, not by way of interference with the rights of the parties, as borrower and lender, but for the support of government, and the consequent protection and welfare of the whole community.''

Counsel for defendant quotes, in support of the proposition advanced, from Hamilton on the Public Credit, as follows: ''Such a tax is in conflict with and contrary to the obligation assumed; the obligation to pay a certain sum is inconsistent with a right, at the same time, to retain a portion of it in the shape of a tax; and to impose such a tax is, therefore, to violate the promise of the government.'' We find a similar quotation from Mr. Hamilton in the opinion in the case of *Murray* v. *Charleston, supra.* What Mr. Hamilton said was peculiarly applicable to that case, where the city attempted to retain the taxes by deducting them from the interest on its bonds, regardless of the situs of the bonds at the time the tax was levied. We think that the argument, that a tax on government bonds violates the state's contract to pay interest, is fully answered by the Virginia and Ohio cases above cited. In *Commonwealth* v. *Maury,* it was said: ''In a word, then, the power of taxation is a part of the legislative sovereignty of the State. It existed when the bonds and coupons were issued, they having, in fact, been issued subject to this power of taxation, which was not in any way released or surrended by their issuance, and being the *lex*

*temporis,* is part and parcel of the bond and coupon contract. If this power of taxation was not expressly reserved, it matters not. For, it need not be reserved; it exists and remains always unless yielding up.'' The power of the State to tax the bonds in question existed at the time they were issued, and at the time defendant's decedent came into possession of them. All property is acquired and held subject to the right of the state to tax it. It does not appear that the bonds in question were issued under circumstances warranting the inference or belief on the part of their purchasers that they were to be exempt from taxation; and no purchaser had the right to assume that the State would delinquish its right to tax all property by excepting them from the general rule.

Our conclusion is that, unless in some way exempted by express provision of law or by contract, bonds issued by municipal subdivisions of this state may be taxed by the State.

It is argued that the statute under consideration fixes the penalty to be imposed by the State, without giving the property owner a hearing before the administrative officer whose duty it is to enforce such penalty, and that the taxpayer is denied due process of law. This is not a summary proceeding; and the statute prescribes the proceedings to be had in enforcing the penalty. Defendant is entitled, by the terms of the statute, ''to have the issue tried by a jury.'' He may yet have any issue of fact determined by a jury. If the decedent, as alleged in the answer, return and plea, did return for taxation all his property, or any portion thereof, the administrator may establish the fact by evidence. The case of *Dukich* v. *Blair,* 3 Fed. (2d.) 302, is cited and relied on. There the commissioner of internal revenue was enjoined from collecting the penalty by distraint proceedings against property. This is not a proceeding in rem. The statute says the person failing to return a true list of his property which should be assessed in this state, ''shall forfeit ten per centum of the value of the property not returned and not otherwise taxed in this state.'' The penalty is ten per centum of the *value* of the property not returned, not a specific part of the property itself.

It is said that the administrator is not in default, and that the penalty can not be enforced against him. The statute expressly provides that the state officer may enforce the collection of the penalty against the personal representative of the estate of the defaulting taxpayer. The penalty attaches to the estate in the hands of the administrator.

We are of opinion to sustain the rulings of the circuit court, on the demurrer to plaintiff's motion, and on plaintiff's demurrer to defendant's answer, return and plea, except in so far as the penalty sought to be enforced attaches to the property owned by the decedent Huddleston on the first day of January, 1924, which was after his death entered on the personal property book and taxed for that year.

*Rulings modified.*