DAVIS *et al. v.* SMITH *et al.*

No. 14624. NOVEMBER 11, 1943.

98

*E. H. Sheats, Standish Thompson,* and *W. S. Northcutt* for plaintiffs in error. *Morgan Belser,* contra.

GRICE, Justice. Taxation is the rule, and exemption the exception. *Athens City Water Works Co.* v. *Athens,* 74 *Ga.* 413; Pacific Co. *v.* Johnson, 285 U. S. 480, 491. What is here sought to be taxed are accounts receivable, due by the government of the United States in the one instance, and Camden County in the other, and a certificate of indebtedness issued by the State Highway Board of Georgia by virtue of the act approved February 26, 1941 (Ga. L. 1941, p. 596). Section 5A of that act provides in express terms that, "No acknowledgment, evidence of debt, or chose in action issued by virtue of this act shall bear any interest for the past or future." The indebtedness of the United States government represents an amount due by it for certain work and material used in constructing United States Army airports at Savannah, the account representing an unpaid balance. That due by Camden County represents an open account for services and paving material on a public highway in that county. The certificate of indebtedness issued by the State Highway Board represents money due to the defendant in error by the State highway authorities for work done and materials furnished in the building of roads. Defendant in error was a contractor doing work on several projects out of which these debits grew. It is and was not an officer of the government, the State, or the county. Ordinarily bills receivable and accounts receivable are personal property and subject to be taxed. Code, §§ 92-102, 92-6215. None of the several species of

property in question has been specifically exempted by the constitution of this State nor the statutes passed in conformity therewith. If any of it be exempt, it must be because it falls within what is known as the instrumentalities rule. The first time that rule was mentioned in the decisions of this court was in *Penick* v. *Foster*, 129 *Ga.* 217 (58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346), where it was ruled that neither the bonds of the State nor of any of its political subdivisions were subject to be taxed; the precise question being whether bonds issued by a municipality and in the hands of a citizen and resident of this State were taxable by the State and the county. The decision in that case was based on the proposition, that, credit being indispensable to any government, it is necessary to establish the same in order to carry on successfully governmental functions, and that one of the most usual methods of using such credit is by the issue of securities and placing them in the markets of the world for sale. The further argument was that every such loan is made in the exercise of a governmental power and to effectuate a governmental object; and that when a negotiable instrument is issued in order to raise money to effectuate a governmental purpose, the paper issued by it is an instrumentality of government. We have nothing of the kind here. Other courts and textwriters, in dealing with the instrumentalities rule, call attention to the fact that if a tax were placed upon these instrumentalities issued by the government, and bearing interest, it would lessen their worth on the market, and to that extent place a burden upon and hamper the government in the exercise of its functions to borrow money, and cause the securities so issued by the government to bring less on the market. See authorities there cited, and others hereinafter mentioned.

None of those considerations are operative in the instant case. It was ruled in *City of La Grange* v. *Whitley*, 180 *Ga.* 805, that a contractor was not exempt from an ordinance imposing an occupation tax because the business conducted by him was that of doing paving under contract with public bodies, and that such status did not give him the position of an agency of government. In James *v.* Dravo Contracting Co., 302 U. S. 134, it was ruled: "An independent contractor, engaged under his contract with the Government in the construction of locks and dams for the improve-

ment of navigation, is not an instrumentality of the Government." In Penn Dairies v. Milk Control Commission, 318 U. S. 261 (63 Sup. Ct. 617, 87 L. ed. 748), it was said that "those who contract to furnish supplies or render services to the government are not such agencies and do not perform governmental functions. . . The trend of our decisions is not to extend governmental immunity from State taxation and regulation beyond the national government itself and governmental functions performed by its officers and agents. We have recognized that the constitution presupposes the continued existence of the States functioning in co-ordination with the national government, with authority in the States to lay taxes and to regulate their internal affairs and policy; and that State regulation like State taxation inevitably imposes burdens on the national government of the same kind as those imposed on citizens of the United States within the State's borders." Citing Metcalf v. Mitchell, 269 U. S. 523, 524 (46 Sup. Ct. 172, 70 L. ed. 384).

The cases of Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522 (36 Sup. Ct. 453, 60 L. ed. 779), and Gillespie v. Oklahoma, 257 U. S. 501-506 (42 Sup. Ct. 171, 66 L. ed. 338), may be distinguished. In the first of these two it was held: "Oil leases of land in Oklahoma made by the Osage tribe of Indians under authority of the acts of February 28, 1891, and March 3, 1905, are under the protection of the Federal Government, and the lessee is a Federal instrumentality, and the State can not, therefore, tax its interest in the leases either directly, or as the leases are represented by the capital stock of the corporation owning them." In the Gillespie case: "The net income derived by a lessee from sales of his share of oil and gas received under leases of restricted Creek and Osage lands, which constitute him in effect an instrumentality used by the United States in fulfilling its duties to the Indians, can not be taxed by a State." The basis of these two decisions rests on the peculiar relationship that the Government of the United States bears to the Indian tribes, which have frequently been referred to as the wards of the Nation, they being directly under the protection of the Federal Government. Nothing in McCulloch v. Maryland, 4 Wheat. 316, Weston v. Charleston, 2 Pet. 449, Pittman v. Home Owners Loan Cor., 308 U. S. 21, Banks v. Mayor, 7 Wall. 16, or Federal Land Bank of New Orleans

*v.* Crosland, 261 U. S. 374, is in conflict with the position of the plaintiffs in error that these credits are taxable. The case of People ex rel. Astoria Light &c. Co. *v.* Cantor, 236 N. Y. 417 (141 N. E. 901), has been examined, and we are unable to follow the reasoning therein, or the conclusion reached. It was held that an unpaid balance of a debt owing on account from the United States on a fully performed war contract is not taxable under Greater New York Charter and Tax Law, § 12, as taxation by the State would hinder the exercise of the Federal Government's constitutional powers to borrow money on the credit of the United States, to declare war, and to raise and support armies. The reasoning of the New York court does not satisfy us. The only authorities cited in support of that ruling are McCulloch *v.* Maryland, and Banks *v.* Mayor, supra. Neither of them, in our opinion, supports the decision. It is true that between the New York case and the instant case is this difference, to wit: in that case the contractor was to receive an amount equivalent to the actual cost plus a reasonable amount for certain overhead charges. We can not perceive, however, that this makes any difference in principle. Let it not be thought that we are of the opinion that a tax, not on the property of the sovereign, which adds to it only an incidental *burden* to the government, is for that reason illegal, nor would it be so even if it also carries a *hindrance* or *embarrassment* to the government which was only incidental. See Wheeler Lumber Co. *v.* United States, 281 U. S. 572; Liggett & Myers Co. *v.* United States, 299 U. S. 383; Alward *v.* Johnson, 282 U. S. 509; and particularly Union &c. R. Co. *v.* Peniston, 18 Wall. 5, where it was said: "It may, therefore, be considered as settled that no constitutional implications prohibit a State tax upon the property of an agent of the government merely because it is the property of such an agent. A contrary doctrine would greatly embarrass the States in the collection of their necessary revenue without any corresponding advantage to the United States. A very large proportion of the property within the States is employed in execution of the powers of the government. It belongs to governmental agents, and it is not only used, but it is necessary for their agencies. United States mails, troops, and munitions of war are carried upon almost every railroad. Telegraph lines are employed in the National service. So are steamboats, horses, stage-coaches, foundries, shipyards, and

multitudes of manufacturing establishments. They are the property of natural persons, or of corporations, who are instruments or agents of the general government, and they are the hands by which the objects of the government are attained. Were they exempt from liability to contribute to the revenue of the states it is manifest the state governments would be paralyzed. While it is of the utmost importance that all the powers vested by the Constitution of the United States in the general government should be preserved in full efficiency, and while recent events have called for the most unembarrassed exercise of many of those powers, it has never been decided that State taxation of such property is impliedly prohibited."

We apprehend that if the defendant in error had failed to pay his ad valorem taxes on the machinery it used in executing the contracts out of which these debt grew, a tax execution would have been issued and levied thereon. This might have tended incidentally to embarrass the government; for it probably would have withdrawn from use an implement in use by the contractor on a government project. Could it be successfully claimed that the State was impotent to enforce its claim for taxes against the property merely because of the use to which its owner had put it? We think not, in view of the controlling authorities. Our conclusion is that the taxation of an account receivable, due from the government of the United States, would not so hinder and embarrass the government in carrying out the powers conferred by the constitution as to forbid the State and its political subdivisions from the exercise of the power to tax the same as property in the hands of the contractor. Nor is the same exempt for any other reason. In our opinion the same thing would apply to the two other credits here involved, one due by the State Highway Board, and the other by Camden County.

For a valuable annotation on the general principles involved in *Penick* v. *Foster*, supra, see 26 A. L. R. 547, continued in 44 A. L. R. 510.

Whether bills receivable and accounts receivable owed by the United States, the State, or a county have seldom or never before been taxed in Georgia, does not answer the question here involved. A like suggestion, however, seems to have been considered by this court in *Georgia Railroad & Banking Co.* v. *Wright*, 124 *Ga.* 596

(reversed on other grounds, 207 U. S. 127), where it was held that shares of stock in one corporation, owned by another, were taxable in the hands of the latter. It was said: "It can not avail the railroad company that during all the years for which the tax now under consideration was levied it had issued annual statements showing its possession of the shares of stock now sought to be taxed, and that the comptroller-general might have ascertained from these statements, which were easily accessible to him, the Georgia Railroad's ownership of the shares. 'Estoppels against the State are not favored; and though they may arise from its express grants, they can not arise from the laches of its officers, since persons who deal with an officer of the government are bound to know the extent of his power and authority.' Lott *v.* Brewer, 64 Ala. 287."

One other argument was suggested, rather than urged, and it was that it would not be in keeping with the honor and good faith of the State or any of its subdivisions to tax these debts. Courts can not decide cases according to their views as to what should be the public policy of the State. Judges are not made the keepers of the State's conscience. If it be the law that these items are taxable, we must so declare.

*Judgment reversed. All the Justices concur except*

JENKINS, Presiding Justice, dissenting. While in *Penick* v. *Foster,* 129 *Ga.* 217 (supra), the question was the power to tax municipal bonds, there designated as "instrumentalities of the government which creates the municipal corporation," the immunity declared seems not to have been based upon the fact that bonds were such an instrumentality, but rather upon the fact that such an instrumentality evidenced a government obligation, and that this immunity "is necessary in order that the functions of government be not unduly impeded." While the rule announced in the *Penick* case has by no means been universally adopted, it has been recognized in California, Louisiana, Michigan, Nebraska, South Carolina, South Dakota, and Tennessee. See especially Droll *v.* Furnas County, 108 Neb. 85 (187 N. W. 876, 26 A. L. R. 543), holding that warrants issued by a subdivision of the State are government instrumentalities, and as such are untaxable; Stratis *v.* Andreson, 254 Mass. 536 (150 N. E. 832, 44 A. L. R. 567).

These rulings are not based upon any constitutional or statutory provision, but are grounded on the principle that the power to tax

is the power to destroy, and that any levy of tax on a government obligation tends to impair the credit of the sovereign and to impede the execution of its authorized functions. As I understand it, the word "instrumentality" has no special, narrow significance; the fundamental basis of all of the above decisions being that the obligation is that of the sovereign government or of a subordinate branch thereof. The reasoning employed in the *Penick* case, that if bonds were permitted to be taxed, the governmental authority issuing them could not sell them nearly so advantageously, would apply with equal or greater force in the making of contracts, if bidders are to be subjected to taxation on the sovereign's certificates of indebtedness.

The conclusion reached in this dissent is based, not only on the rule recognized by the court of last resort in the State of New York, in People ex rel. Astoria Light Co. *v.* Cantor (supra), dealt with but disapproved in the majority opinion, but as I see it, is the necessary sequence of what was said by the Supreme Court of the United States, through its Chief Justice, in Banks *v.* Mayor, 74 U. S. (7 Wall.) 16, 21, 23, where the court, dealing with certificates of indebtedness, seems to have planted its holding squarely upon the fact that an authorized debt of the sovereign is not taxable; and that such certificates, even for indebtedness already incurred, stand upon precisely the same footing as bonds issued for the purpose of obtaining funds to be thereafter expended. In that decision the court used the following language: "Evidences of indebtedness of the United States . . sometimes called stock or stocks, but recently better known as bonds or obligations, have uniformly been held by this court not to be liable to taxation under State legislation. . . No one affirms that the power of the government to borrow, or the action of the government in borrowing, is subject to taxation by the States. . . An attempt was made . . to establish a distinction between the bonds of the government expressed for loans of money and the certificates of indebtedness for which the exemption was claimed. The argument was ingenious, but failed to convince us that such a distinction can be maintained. It may be admitted that these certificates were issued in payment of supplies and in satisfaction of demands of public creditors. But we fail to perceive either that there is a solid distinction between certificates of indebtedness issued for money borrowed and given to creditors, and certificates of indebtedness is-

sued directly to creditors in payment of their demands; or that such certificates, issued as a means of executing constitutional powers of the government other than of borrowing money, are not as much beyond control and limitation by the States through taxation, as bonds or other obligations issued for loans of money. . . The certificates of indebtedness . . were received instead of money at a time when full money payment for supplies was impossible, and . . are as much beyond the taxing power of the States as the operations themselves in furtherance of which they were issued."

In Hibernia Savings Society v. San Francisco, 200 U. S. 310, 313, 314, the ruling just quoted was cited with approval, and the rule that certificates for past expenditures stand on the same footing as bonds seems to have been fully recognized, although the court held that mere warrants issued for "immediate" payment, being no more than checks or money, did not come within the rule.

The effect of the majority ruling would seem to be far-reaching. So far as I am aware, it will for the first time subject to taxation in this State a vast number of governmental obligations issued or owing by the various governmental agencies. It appears to me that if bonds issued by the State or one of its subordinate divisions, for the purpose of borrowing money, are non-taxable, a fortiori should an obligation, issued by any one of the authorized governmental agencies, where payment is in default, be non-taxable; since the impairment of credit or other impeding of governmental functions may be even greater than that resulting from the taxing of bonds. The results of the majority holding, both on the State or its subordinate divisions or governmental agencies, and affecting large groups of persons to whom it may be necessary in times of financial stress to issue certificates, scrip, or other obligations in lieu of cash, may be so injurious as to seriously and literally impede the functions of government.